Russ *v.* Mebius.

"without the consent of Bird." The finding to this effect refers to the lot on which Ford resides, which is not the lot in dispute.

---

## RUSS *v.* MEBIUS *et al.*

Where a son conveys real estate to his father—the only consideration being a verbal agreement by the father to make a will and devise to the son certain property, and the father dies without having complied with the agreement—the agreement is void, the conveyance is executed without consideration, express or implied, and a trust results in favor of plaintiff by implication of law, and he may set aside the conveyance and recover the property—it being shown that the transaction was not a gift.

If, in such case, the conveyance did not express the consideration for which it was given, but acknowledged the payment of a nominal consideration in money, parol evidence would be inadmissible to establish the trust in favor of the son.

The doctrine of resulting uses and trusts is founded upon mere implication of law, and, generally, this implication cannot be indulged in favor of the grantor, where it is inconsistent with the presumptions arising from the deed. Unless there be evidence of fraud or mistake, the recitals in a deed are conclusive upon the grantee, and no resulting trust can be raised in his favor in opposition to the express terms of the conveyance.

No implication of trust arises upon a purchase of property by a parent in the name of his child; as is the case when the purchase money is paid by one person, and the conveyance taken in the name of a stranger. *Prima facie,* such purchase is regarded as an advancement.

Appeal from the Twelfth District.

Russ v. Mebius.

The material facts as found by the referee, are in substance, that Christian Russ, now deceased, arrived in California in 1847, and here resided until his death, in 1857; that plaintiff and all the defendants are his only surviving children, except defendants Johanna Christiana Russ, who is his widow, and C. F. Mebius, husband of one defendant—Mebius and Adolphus G. Russ being executors of the last will and testament of deceased; that in 1847, Christian Russ, the father, having applied to Bryant, then Alcalde of San Francisco, for a grant of lots Nos. 256, 257, 262, and being told that but one lot could be granted him, or in his name, put in three petitions for these lots—one in the name of Charles Russ, plaintiff, the petition being signed by the father in the name of plaintiff, who was a minor and not a resident of this State—one in the name of Adolphus G. Russ and signed by him, and the other in the name of and signed by deceased; that the Alcalde granted the three lots, one to Adolphus G., one to Christian Russ, the father, and one lot, No. 256, now in controversy, to Charles Russ, plaintiff; that deceased paid out of his own money the price and consideration of the three lots; that the grants of the same were delivered to him by the Alcalde, and that he kept them in his possession thenceforward, until his death, as evidence of his title; that at the time of procuring the grants, deceased intended them all for his individual use and benefit, and did not intend lot No. 256 as a gift or advancement to his son Charles, the plaintiff; that deceased built a dwelling house on the lots and resided therein with his family until 1850 or 1851, and between that time and 1855, put improvements on the lots worth $20,000, and always, until his death, occupied the same by himself or tenants, collected the rents and profits for his own individual use, with the knowledge and assent of plaintiff, who from time to time collected a portion of the rents, but accounted for the same to his father; that plaintiff arrived in California in 1848, and has resided here since; that a portion of the time he lived in his father's family upon lot 256, at other times, between 1850 and 1855, he occupied a portion of the lot with his own family; and at other times still, he occupied other portions of the lot jointly with Adolphus G., but that such occupation was by the permission of deceased and without rent, and that at times plaintiff has occupied portions of other property of deceased in his life time, free of rent; that in May, 1855, either for the purpose of having the title to lot No. 256 appear upon the record in the name of the deceased, or because deceased wished to raise money by a mortgage thereon, and

could not do so while it stood in the name of plaintiff, (and for which of these reasons, the referee says, does not clearly appear) the father applied to plaintiff for a deed of the lot; which was executed and delivered, or rather placed on a table, and from thence taken by deceased and recorded, on a verbal agreement between them that the father should make his will demising to plaintiff certain other lots, valued at $16,000, about the supposed distributive share of plaintiff in his father's estate—lot No. 256, when so deeded, being worth about $25,000; that the father died without complying with this agreement, though in his will he distributed his estate according to our law of descents. In accordance with the report of the referee, judgment was rendered for defendants. Plaintiff appeals.

*Heydenfeldt*, for Appellant.

1. There could be no resulting trust, because there was no purchase. The grant was in the usual manner of granting a lot by an Alcalde. It was, therefore a donation; nothing was paid for it; the fees of the officers were paid, but that was not in consideration of the purchase. It amounts to no more than paying a lawyer for drawing a deed. It might make the son *ex equo et bono* a debtor to the father to the amount of the fees and expenses paid, but it could do no more. It could not be a resulting trust. (*Scott* v. *Ward*, 13 Cal.; *Noe* v. *Card*, 14 Id.; 4 Kent, 317, *et seq*. notes.)

Even if there had been a payment for the land, it being in favor of a child, and not an amount inconsistent with the father's means, there would be no resulting trust in favor of the father. (*Douglas* v. *Brice*, 4 Rich Eq. 322; *Shepherd* v. *White*, 10 Texas, 72; *Welton* v. *Divine*, 20 Barb. 9.) But, on the contrary, supposing that the deed from plaintiff to deceased was delivered, then there would arise a resulting trust in favor of the plaintiff.

One of the grounds for resulting trust is stated by Lomax, in his Digest of Real Property, thus: "Where a conveyance is made of land without any consideration or declaration of the uses." (1 Lomax Dig. 200, 207.) This is quoted with approbation by 4 Kent, 318, note. (See also, Story's Eq. secs. 1197, 1198, 1200.)

So where the estate is conveyed, but for particular objects and purposes, if the objects and purposes fail, and do not take effect, a resulting trust will arise to the grantor. (Story's Eq. sec. 1200; *Dyer* v. *Dyer*, 2 Cox R. 92; 2 Fonblanque, 121; Jeremy Eq. 130–34, *et seq*.)

And the facts to establish or rebut a resulting trust may be proved by parol. (4 Kent, 317; *Willis* v. *Willis,* 2 Atk. 71; *Boyd* v. *McLean,* 1 Johns. Ch. R. and cases there cited; *Botsford* v. *Burr,* 2 Id. 405; *Hall* v. *Sprigg,* 7 Martin, 243; *Powell* v. *Monson,* 3 Mason, 362; *Hart* v. *Canady,* 3 Littell, 399; *Buck* v. *Pike,* 2 Fairfield, 1.)

The true position of ‘the parties here is—the plaintiff and deceased agreed, by parol, upon an exchange of lands; the land of each was to be the consideration, or purchase money, for the land of the other. The plaintiff here paid the consideration by the execution of his deed, but obtained no consideration in return, and there has been no other part performance.

The contract, then, to buy the land of deceased, being by parol, is within the Statute of Frauds, and the mere payment of the purchase money is insufficient to take it without the operation of the statute. (*Arguello* v. *Edinger,* 10 Cal. 159; 2 Story's Eq. Jur. sec. 760; 2 Parsons on Con. 551.)

Where a contract is void by the Statute of Frauds, and the purchase money has been paid, it can be recovered back. (*Gosbell* v. *Archer,* 4 Nev. & Man. 485; *Adams* v. *Fairbain,* 2 Starkie R. 277; *Thompson* v. *Gould,* 20 Pick. 134; *Gillet* v. *Maynard,* 5 Johns. 85; *Buck* v. *Waddle,* 1 Ohio, 357.)

And as the consideration here was the conveyance of land, there must be a resulting trust in favor of the plaintiff. (*Short* v. *Wilson,* 13 Johns. 33; *Jackson* v. *Matsdorf,* 11 Id. 91; *Jenkins* v. *Eldridge,* 3 Story, 181; *Pratt* v. *Thornton,* 28 Me. 355; *Hoel* v. *Coursery,* 26 Miss. 511.)

*Shattuck, Spencer & Reichert,* for Respondents.

I. The findings are sufficient to support the judgment. 1. They show that the plaintiff never owned the lot in controversy. 2. That on the twenty-fifth of May, 1855, he deliberately deeded it away, and if he ever had owned it, he did not own it after that time.

On the first point, we admit that the finding is, that the plaintiff's name was used by his father in obtaining the lot in controversy, but that the father intended it for himself, and not for the plaintiff.

The deceased made the application, signed the petition, paid the municipal fees, received and always retained the grant, complied with its conditions, improved the property, and held the possession thereof more than ten years, and died, casting the descent upon his heirs.

The plaintiff attained his majority some nine years before his father's death; he knew all the facts, yet never, in his father's lifetime, did he set up any claim to the property. We submit, that the father, from the first, was the equitable owner.

This Court has decided that grants made by an Alcalde to a married man, are not purchases, so as to make common property of the lands granted.

It is also true that the payment of the purchase money is the essential thing to raise a resulting trust against the grantee.

The principle is, that he who pays the money necessary to obtain a grant of land, and takes the conveyance in another's name, but intended for his own benefit, is the equitable owner. (4 Sergt. & Rawle, 329; *Prankerd* v. *Prankerd*, 1 Eng. Ch. R.)

II.   But if the equitable and legal estate were both in the plaintiff, the finding shows that it was conveyed by deed to the deceased, on the twenty-fifth of May, 1855. But the counsel says, the consideration agreed upon was not paid, and hence, a trust arises. We answer:

1. The agreement in regard to the will was not intended to be a consideration for the deed. The consideration mentioned in the deed, and the only one, was for money, and this cannot be impeached by parol, to defeat the conveyance. (*Morse* v. *Shattuck*, 4 N. H. 232; *McCrea* v. *Purmort*, 16 Wend. 472.)

2. The finding in regard to the agreement to make a will, shows that such will was not intended as the consideration for the deed, as the deceased, by the will, was to make the plaintiff equal with his brothers and sisters. He who had conveyed the lot was to receive no greater bequest than those who made no conveyance. The plaintiff was to be treated as a child, and not as creditor.

3. If the consideration of the deed had been the making a will, and making the plaintiff equal with his brothers and sisters therein, the condition has been complied with, and such consideration paid, for the will is a substantial compliance with the agreement.

*E. Cook*, also for Respondents.

COPE, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The plaintiff conveyed to his father certain real estate in the city of San Francisco, and the object of this suit is to set aside the convey-

ance and obtain possession of the property. The case was tried by a referee, and upon his report a judgment was rendered in favor of the defendants. The plaintiff appeals from this judgment, and contends that the facts found by the referee are sufficient to entitle him to recover. The ground upon which he relies is the want of consideration for the conveyance. It appears that the consideration was a verbal agreement by the father to make a will, and devise to the plaintiff certain property mentioned in the complaint. The father died without having complied with the agreement, and the plaintiff claims that he is entitled to be restored to his original rights. The referee finds that this agreement was the only consideration for the conveyance, but whether this is the consideration expressed in the conveyance itself, does not appear. Assuming that it is, we are unable to see why the case does not fall within the doctrine of resulting trusts. The agreement was void, and the conveyance was executed without any consideration, express or implied. It is shown that the transaction was not intended as a gift, and as there was no consideration, a trust resulted in favor of the plaintiff by implication of law. Where a conveyance, says Story, is made of land or other property without consideration, expressed or implied, or any distinct use or trust stated, the intent is presumed to be, that it shall be held by the grantee for the benefit of the grantor, as a resulting trust. (2 Story's Eq. sec. 1197.) "This," says the same author, " is in strict conformity to the rule of the common law, applied to resulting uses, which, indeed, were originally nothing but resulting trusts. Thus, a feoffment, made without consideration, was, at a very early period of the common law, held to be made for the use of the feoffer. * * Be the origin of the doctrine, however, as it may, it is firmly established in equity jurisprudence in matters of trust. And it is not in any manner affected by the provisions of the Statute of Frauds, for that statute contains an express exception of trusts arising by implication, and transferred and extinguished by acts of law." (Id. 1198.)

Our opinion is, therefore, that the facts set forth in the report of the referee are sufficient to raise the presumption of a trust; and the enforcement of this trust is a right which the plaintiff may demand. The equities relied upon by the defendants, whatever may be their moral merits, are insufficient to constitute a defense. No implication of a trust arises upon a purchase of property by a parent in the name of his child. *Prima facie*, such a purchase is to be regarded as an advancement, and an implied trust in favor of the person paying the money

does not arise. This is one of the exceptions to the general rule, and it seems to be as well settled as the rule itself. "Where property," said the Master of the Rolls, in *Sidmouth* v. *Sidmouth* (2 Beavan, 447) "is purchased by a parent in the name of his child, the purchase is *prima facie* to be deemed an advancement; the resulting or implied trust which arises in favor of the person who pays the purchase money, and takes a conveyance or transfer in the name of a stranger, does not arise in the case of a purchase by a parent in the name of a child." (See 2 Story's Eq. sec. 1202.) It is by no means clear that the defendants are in a situation to raise this question, but admitting that they are, their position is certainly untenable. The other points made are immaterial, and a more particular reference to them is unnecessary.

It is not improper to notice a statement made on the argument of the case in reference to the contents of the conveyance, though the record itself is silent upon the subject. It was stated that the conveyance did not express the consideration for which it was given, but acknowledged the payment of a nominal consideration in money. This is an important matter, and, if left open, may embarrass the action of the Court below, and become the basis of a second appeal. If the statement was correct, parol evidence was inadmissible to establish the trust, and the plaintiff, though entitled to a reversal, must eventually fail to obtain the relief which he asks. "This distinction," says Story, "is to be observed in cases where a consideration, although purely nominal, is stated in the deed. If no uses are declared, the grantee will take the whole use; and there will be no resulting use for the grantor; because the payment, even of a nominal consideration, shows an intent that the grantee shall have some use, and no other being specified, he must take the whole use." (2 Story's Eq. sec. 1199.) The doctrine of resulting uses and trusts is founded upon a mere implication of law, and in general this implication cannot be indulged in favor of the grantor, where it is inconsistent with the presumptions arising from the deed. Unless there is some evidence of fraud or mistake, the recitals in the deed are conclusive upon the grantor, and no resulting trust can be raised in his favor in opposition to the express terms of the conveyance. In *Leman* v. *Whitley*, (4 Russ. 423) a son conveyed an estate to his father, nominally as purchaser, but really as a trustee, and in order that the father, who was in better credit than the son, might raise money upon it, by way of mortgage, for the use of the son. Before any money was raised, the father died, leaving a will, in which he

made a general devisee of all his real estate.  The suit was against the devisee, to establish the trust, and compel a reconveyance of the estate.  The decision was adverse to the plaintiff, and the Master of the Rolls, in delivering his opinion, said: "The question in this case would regularly have arisen upon an objection to the admissibility of parol evidence of the alleged trust.  There can be no doubt of the moral honesty of the claim made by this bill.  But the question is, whether the plaintiff can be relieved consistently with the provisions of the Statute of Frauds, which, although it may bear hard upon the plaintiff in the particular case, was certainly called for by the public interest.  There is here no pretense of fraud, nor is there any misapprehension of the parties with respect to the effect of the conveyance It was intended that the father should, by a legal conveyance, appear to be the legal owner of the estate.  There is here no trust arising or resulting by implication or construction of law."  The Court of Chancery of New York, in a case involving the same principle, said: "No resulting trust can be raised in opposition to the express terms of the conveyance, and in favor of the grantor."  (*Squire* v. *Harder,* 1 Paige's Ch. 494.)

Judgment reversed, and the cause remanded for a new trial.