JOHN O'CONNER *v.* ANN WARD ET AL.

60 1025
f90 641

1. FRAUDULENT CONVEYANCE. *Suit to vacate. In delicto. In pari delicto Case in judgment.*
W. died leaving a large estate of both real and personal property. He was largely indebted. His heirs were his daughter and his widow. Soon after his death O. came to the widow and daughter, saying that he had been requested by the deceased to superintend their business, to be their friend and adviser. He at once assumed the relation of agent and confidential adviser to them, and they being unaccustomed to business, committed to him the entire control and management of their affairs. He procured the removal of S. who had been duly appointed administrator of the estate in order that his custody and management of the estate might not be interfered with. As their agent and representative he borrowed from P. $25,000 which, under the suggestion of O., was secured by a mortgage by the widow and daughter on their lands. O. received all the rents and profits of the estate for the professed purpose of applying them to the payment of the debts due by it. O. represented to them that he was already a creditor of the estate and of theirs, and that the creditors of Mrs. W., the widow, could subject the property to their demands. Accordingly conveyances were made by the widow and daughter to O. at his instance and solicitation for the double purpose of securing him and of

defrauding the creditors of Mrs. W. The widow and daughter filed a bill in chancery to have the conveyance cancelled. *Held,* that these facts show that the parties to the conveyances were *in delicto* but not in *pari delicto* and the complainants were entitled to the relief asked.

2. SAME. *Quasi administrator.*
In the circumstances of the case above stated, O. occupied towards the widow and child of W. a relation analogous to that which he would have occupied, if he had been the legally appointed administrator of W.'s estate.

3. SAME. *Of property not subject to demand of creditors. Effect.*
Where property is not subject to the demands of creditors, a conveyance of the same with intent to defraud such creditors does not come within our Statute of Frauds.

4. SAME. *To administrator. Cancellation. Public policy.*
Where the heirs to an estate have conveyed to the administrator thereof, at his instance and request, realty for the purpose of defrauding creditors of the estate, even though the parties be in *pari delicto,* a court of equity will cancel the same at the instance of the heirs, because public policy will not allow him under any circumstances to thus acquire property in violation of his fiduciary relations and then to shelter himself behind the plea that those defrauded by him were guilty of an equal wrong.

5. SAME. *When treated as a mortgage.*
An absolute conveyance which is tainted with fraud will not be treated by a court of equity as a mortgage, upon proof of an agreement of the parties making it such, and thus be made the ground of the relief sought by the fraudulent grantor, unless the circumstances be such that the relief can be granted, notwithstanding the fraudulent character of the conveyance.

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

The bill in this cause sets forth these facts : —

The complainants are the daughter and widow of Dr. Amos Ward, who died intestate in July, 1875, the owner of a considerable real and personal estate, heavily embarrassed with debts. The estate consisted of a plantation of some three thousand acres, with the usual personal property found on such places, and a residence in the city of Aberdeen. The plantation was under mortgage for about $30,000. Dr. Ward left no male member of his family surviving to whom the complainants could intrust the management of the estate, and they were ignorant of business matters. Soon after the death of Dr. Ward, the defendant, who had been his intimate friend,

came to complainants and told them that the intestate, on his
death-bed, had requested him to take charge of his estate and
keep it out of law; to be a friend and adviser to his family,
and manage his estate for them.   Relying upon the assurances
of friendship thus expressed by the defendant, the complain-
ants turned over to him the entire estate, and in all things fol-
lowed his advice and instructions.   Some time in the latter
part of the year 1875, one Spratt, a creditor of the intestate,
took out letters of administration on his estate, which action
of said Spratt was represented by the defendant to the com-
plainants to be evidence of an intention on the part of Spratt,
who had also been a warm friend of Dr. Ward's, to sacrifice
the estate by forcing it to sale for the payment of the debts
due by it.   O'Conner, by some arrangement with Spratt, suc-
ceeded in procuring a revocation of the grant of administra-
tion, which action, on his part, he represented to be of great
advantage to the complainants, and magnified its importance
to them and professed great friendship for them.   At this
time the defendant represented to them that he himself was a
creditor of said intestate, and that he was expected to make
other advances of his own funds, and that he had no security ;
that to protect him from loss, to enable him to command the
situation in future and compromise with creditors, he required
complainants to execute to him a conveyance of the east half
of block No. 84, in Aberdeen, the same being a part of the lot
upon which the homestead was situated, he, the defendant,
agreeing to sell the same and account for the proceeds, or that
he would hold the property in trust for the complainant, Mary
E. Ward, and would reconvey to her.   Induced and influenced
by these representations, complainants executed a deed of
conveyance of the homestead.   Acting as the agent of the
complainants, the defendant arranged with one Perrine to ad-
vance to them the sum of $25,000, which amount the credi-
tors of the estate holding the mortgage upon the plantation
had agreed to accept in proportionate amounts, and for the
balance of their debts to accept the individual notes of the

widow, which she gave ; the said sum of $25,000 was secured by a mortgage on the plantation, and was used in paying the creditors who had agreed to accept it, and who thereupon released the estate from all liability to their debts, taking the notes of the widow for the unpaid balances. It is charged that by this arrangement the debts due by the estate to its secured creditors were paid and discharged, and that as a fact the defendant had from the proceeds of the crop raised on the place, and from sales of personal property, received enough money to have paid all other debts for which the estate was liable, including any amount due to the defendant, but that the defendant afterwards represented to them that he was a creditor of the estate and of theirs ; that he was without security, and that he would take the title to all the remaining portions of the land not before conveyed to him, including the homestead, and also all the personal estate except the household furniture, which title he would hold for his own protection and indemnity ; that the creditors of Mrs. Ann Ward, to whom she had executed her notes for the unpaid balance due from the estate, might, by legal proceedings, take the property from them, and thus cause their ruin and his loss ; that he would take the property, manage it, and pay what was due him, and the annual interest to Perrine, and what amount he could of the principal of Perrine's debt, and would reconvey the property whenever he was paid, and, on request, to the complainant, Mary E. Ward ; that the conveyance was accordingly made, and to give to it the appearance of an actual sale O'Conner paid to Mrs. Ward the sum of $3,692.75, which, according to the understanding of the parties, was soon afterwards returned to him ; that the said last named conveyance, though absolute on its face, was made and accepted as a mortgage to secure to O'Conner any sum which might be due to him from the estate of Dr. Ward or from the complainants ; that in fact there was nothing due at the time from either the estate or the complainant, to said O'Conner, or that if there was it had been long since repaid, but that O'Conner fraud-

ulently induced them to make the conveyance to secure certain sums which he falsely pretended to be due; that at the time of said last conveyance these representations were made by O'Conner with the intent and purpose of defrauding the complainants and of obtaining title to the property not as security for a debt due him, but for the asserting of an adverse claim thereto. At the time of this conveyance it was agreed between the parties that O'Conner should hold the property in trust for the complainant, Mary E. Ward, and would convey it to her on request.

Since then, in the years 1880 and 1881, O'Conner, by various letters addressed to third persons, admitted that he held the estate of Dr. Ward in trust for Mrs. Ward, and that all the debts for which it was liable had been discharged except a balance of about $23,000 due to Perrine. These letters are made exhibits to the bill.

In 1878 Spratt & French, to whom Mrs. Ward had executed her notes for a part of the debt due them by the estate as hereinbefore stated, obtained a judgment thereon, and under it an execution was sued out and levied on the plantation. To prevent a sale O'Conner exhibited his bill in chancery, setting up a claim as owner, under the conveyances stated above. In this suit both the complainants were examined as witnesses, and testified most positively that the conveyances were intended as absolute and unconditional deeds; that the sale of the lands had been made in good faith to O'Conner, who had paid full value therefor; that he did not hold them under any express or implied trust for the complainants, or either of them. In this suit O'Conner was successful, and the creditors retired defeated in the contest. It is now charged that this testimony was delivered under the advice, persuasion, and influence of O'Conner, who represented to complainants that he had sworn to the bill, in which it was charged that the lands were in good faith his; that the face of the papers showed the sale to have been absolute, and that they must be governed by what was shown in the deeds and not by the private understanding; that

O'Conner escorted them to the place where their depositions were taken, "and before leaving home rehearsed to them what he understood the facts to be."

The letters of the defendant filed as exhibits to the bill are strongly corroborative of its allegations. There are many strong allegations in the bill of the great influence which the defendant had acquired over the complainants, and it is repeatedly charged that his conduct was the result of a deliberately planned scheme to acquire, through such influence, the possession of an adverse title to the estate.

There was an answer denying fraud, accompanied by a demurrer to the bill, which, on hearing, was overruled, from which decree this appeal is prosecuted. The answer fails to deny the facts upon which fraud is predicated by the complainants; it consists principally of denials of the motives ascribed to the defendant by the complainant as showing a fraudulent intent as against them. There is no denial of the facts charged as to the fraudulent intentions as against the creditors of Mrs. Ward; nor is it denied that as between the parties the agreement was that the conveyances, though absolute in form, were to operate only as mortgages; nor is there any denial of the charge that there was an agreement that he was to hold the property in trust for Miss Ward, and to convey it to her on demand.

*McFarland & Payne*, for the appellant.

Those who seek aid of a court of equity must themselves have "clean hands." Whilst it is true that fraud against creditors cannot be set up by any, except one standing upon rights of a defrauded creditor, yet where the grantor is in no condition to ask a court of equity to interfere actively in his or her behalf to secure to him the fruits of the fraudulent devise, the court will not extend its aid, but will leave the parties where it found them. *Hassam* v. *Barrett*, 115 Mass. 256; *Watt* v. *Conger*, 13 Smed. & M. 412; *James* v. *Bird's Admr.*, 8 Leigh, 510; 1 Story's Eq. Jur., 296; Bump's Fr. Conv. (2d ed.) 440, and cases in note, 441. There is no force in the

suggestion that the parties here, whilst; *in delicto* are not *in pari delicto*, laid down in Bump's Fr. Conv. (1st ed.) 441–444. That doctrine does not apply to this case, the grounds upon which it proceeds is to prevent the perpetration of a greater fraud. It is where the rights of the parties only are to be affected, that this comparative estimate of the wrong doing is made, not where, to grant the relief, would be to aid in executing a plan or purpose to injure and wrong third persons, as in this case.

*Reuben Davis,* on the same side.

The trust which is attempted to be fastened upon the property is not evidenced by writing. The conveyances are absolute upon their face, hence no relief can be granted the complainants. *Klein* v. *McNamara,* 54 Miss. 100 ; *Prewitt* v. *Dobbs,* 13 Smed. & M. 431 ; *Anding* v. *Davis,* 38 Miss. 593 ; *Vaner* v. *Vaner,* 23 Miss. 378 ; *Littleworth* v. *Davis,* 50 Miss. 403 ; *Freeman* v. *Wilson,* 51 Miss. 333 ; *Edrington* v. *Harper,* 3 J. J. Marsh. 353.

*Houston & Reynolds,* for the appellees.

The rule deducible from the adjudged cases is thus stated by Bump : " The rule that a debtor is not entitled to any relief against a fraudulent conveyance only applies when the parties are in *pari delicto*." It is founded on principles of public policy for purposes of justice, and can never be made the means of sustaining an injustice. If the debtor, therefore, acts under circumstances of oppression, imposition, or undue influence, so that it appears that his guilt is subordinate to that of the grantee, equity will grant relief, not on account of any right in the debtor, but for the purpose of preventing a greater fraud by the grantee. Bump on Fr. Conv. (2 ed.) 441 ; *Prewitt* v. *Coopword,* 30 Miss. 369 ; *Birdsong* v. *Budson,* 2 Head ; *Beall* v. *Hall,* 22 Geo. 431 ; *Ford* v. *Harrington,* 16 N. Y. 285 ; *Dismukes* v. *Terry,* Walk. 202, 203, and other cases cited in Bump. O'Conner was the confidential agent of appellees. He had assumed the management of the estate which had descended to them. They were inexpe-

rienced and trusted him implicitly, and did whatever he advised or requested. If he had induced appellees to execute a conveyance to himself for the purpose of defrauding creditors, a court of equity would, at their instance, set it aside. The principle is well settled, and the authorities are cited in Bump on Fr. Conv. (2 ed.) 442, and especially *Ford* v. *Harrington*, 16 N. Y. 288. This court holds, in *Cameron* v. *Lewis*, 56 Miss. 81, that where some advantage is gained by virtue of a confidential relation, it is a constructive trust, and need not be in writing. If the absolute deeds cannot be held to be mortgages, if the parol trust is not sufficiently manifested in writing, still there is equity in the bill. The appellees were induced to execute the conveyances by the fraud and undue influence of appellant. A court of equity will set aside any conveyance obtained by fraud and undue influence of the grantee upon the grantor. That the bill charges fraud, imposition, oppression, and undue influence upon the part of O'Conner, will not be questioned. In fact, these charges burden the bill.

*Sykes & Bristow*, on the same side.

The rule of *pari delicto* applies only when the parties are in equal fault. If the debtor does not enter into the transaction freely and with a fraudulent purpose, then the fraud does not remit the reprobation of a court of equity. When the debtor is not the originator of the fraud, but is enticed into the transaction through weakness of mind, advice of his attorney, or creditor to whom the transfer is made, equity will grant relief, not on account of any right in the debtor, but to prevent the perpetration of a greater fraud. Bump on Fr. Conv. 447; *Prewitt* v. *Coopword*, 30 Miss. 369; *Fullore* v. *Cole*, 41 Barb. 318; *Beall* v. *Hall*, 22 Geo. 431; *Ford* v. *Harrington*, 16 N. Y. 285; *Osborne* v. *Williams*, 18 Ves. 378.

COOPER, J., delivered the opinion of the court.

The demurrer was properly overruled. It is a general demurrer to the whole bill and though many causes are assigned,

each one denies the right to relief on all the facts stated in the bill. The complainants ask to be relieved on either one of the several grounds that the conveyances were intended as mortgages, though absolute in form, or, that they were made for the purpose of defrauding the creditors of Mrs. Ward at the instigation and procurement of the defendant, who by reason of his relationship to the complainants had acquired and exercised such an influence over them that the fraud ought to be imputed to him to so much greater degree than to them, as to induce the court to cancel the conveyances under the rule that where the parties are in *delicto*, but not in *pari delicto*, relief will be granted to the least guilty ; or, that in view of the relationship existing between the parties, public policy requires that relief should be granted even though the parties are in *pari delicto;* or, that the defendant has in writing declared a trust in favor of the complainant Mary E., which a court of equity should enforce. It would seem that the agreement that the conveyances should be treated as mortgages is so intimately connected with the intent to defraud creditors that no relief could be granted upon this as an independent ground, unless the circumstances are such as to justify the court in proceeding notwithstanding the fraudulent character of the conveyances. *Ybarra* v. *Lorenzana,* 53 Cal. 197.

Whether the declaration of trust is sufficient under our Statute of Frauds, and whether if it is it would be enforced under the circumstances of this case, it is not necessary now to determine ; no court of equity would enforce it if the effect would be to interpose any additional obstacle to the collection of their claims by the creditors of Mrs. Ward. But admitting the conveyances to have been made for the purpose of defeating the creditors of Mrs. Ward, we are of opinion that under the circumstances of their execution they should be annulled.

As to the creditors of Dr. Ward, O'Conner was executor *de son tort* by reason of his intermedling with the estate, and

as to the widow and child of the intestate he occupied a very analogous relation to that which would have been held by an administrator legally appointed. His was a position inviting trust and confidence, and though by his answer he denies that this was reposed to the full extent charged in the bill, he does not deny the relation which he held to the complainants, nor that they intrusted to him the entire management of their affairs. It is but just that his duties, liabilities, and incapacities should be tested by those which would have devolved on one legally appointed to the performance of the duties which he undertook.

Under the facts charged in the bill and admitted by the demurrer the parties are not in *pari delicto.* These facts are, that soon after the death of the intestate O'Conner came to the widow and child and stated that he had been requested by Dr. Ward to superintend their business; to be their friend and adviser; that he at once assumed the relation of agent, confidential friend and adviser to the complainants; that they were unaccustomed to business, and committed to him the entire control and management of their affairs; that he procured the removal of Spratt, who had been duly appointed as administrator, in order that his custody and management of the estate might not be interfered with; that he, as their agent and representative, borrowed from Perrine the sum of $25,-000, which was secured under his directions by the execution of a mortgage by complainants on their lands; that he received all the rents and profits of the estate for the professed purpose of applying them to the payment of the debts due by it; that at the time when the conveyance of June, 1877, was made he had thus received enough money to pay all such debts; that he represented to complainants that he was then a creditor of the estate and of theirs, and that the creditors of Mrs. Ward could subject the property to their demands; that the conveyances were made at his solicitations and instigation for the double purpose of securing any debt due to himself and of defrauding the creditors of Mrs. Ward.

These admitted facts indicate that the scheme was really concocted by the defendant, and though participated in by the complainants, that their conduct was the result of his suggestion and advice, without which the conveyances would not have been made.

The answer of the defendant denying the fraud is rather a denial of the motives imputed to him as against the complainants than a denial of the facts charged from which the fraud is to be inferred. Taking the facts to be as stated, the complainants are to be considered rather as the victims of the schemes and influences of the defendant, than as conspirators in an unlawful enterprise equally guilty with him. We do not agree with the proposition announced by Mr. Bump in his work on Fraudulent Conveyances, that- where a person has sufficient capacity to contract, and makes a conveyance with intent to hinder, delay, or defraud his creditors, a court of equity will not inquire into the degrees of guilt between the grantor and the grantee. The rule is not universal, and, as stated, is not supported by the authorities. In *Osborne* v. *Williams*, 18 Ves. 382, a father and son had entered into an agreement which was in controvention of a positive statute; the contract had been executed by the son and the father had derived a profit from its execution; both parties having died, a suit was instituted by the representatives of the son against those of the father for an account, and relief was granted upon the ground that while the parties were in *delicto* they were not in *pari delicto*.

In *Pinkston* v. *Brown*, a mother being threatened with suit by her creditors desired to convey her property to her children to defeat such claims, and sent for one Craig to advise with her upon the subject. Craig advised that she should execute a mortgage to secure other debts due to creditors who were not pressing their collection; but as the value of her property exceeded the amount of such claims, she made a note to her son for a feigned debt and the mortgage was executed to secure this sum, together with the other valid debts; hav-

ing paid all the real debts secured, she exhibited her bill to vacate the mortgage. It appeared from the evidence that the son had great influence over her; that he informed her that Clarke was about to press the collection of his claim, and the court being of opinion that he gave such information for the purpose of forcing her to the execution of the mortgage, held that the relief should be granted, saying "the mother and son were in *delicto* but not in *pari delicto.*" *Smith* v. *Bromly*, Doug. 696; *Browning* v. *Morris*, Cowp. 790; Story's Eq. Jur., sect. 300; *Boyd* v. *De La Montaigne*, 73 N. Y. 498; *Pinkston* v. *Brown*, 3 Jones Eq. 494. In none of these cases was it intimated as a reason for granting relief that the parties had not sufficient capacity to contract.

We are not forgetful of the fact that in the litigation between the creditors of Mrs. Ward and O'Connor the complainants gave emphatic testimony to the *bona fides* of the conveyances; but the demurrer admits they were, in fact, fraudulent as now charged in complainant's bill, and if they were, O'Connor, as complainant, made oath to the same facts as did the complainants as witnesses, and is equally with them guilty of perjury.

As to the interest of Miss Ward in the estate and the homestead of the mother, the conveyances could not have been fraudulent as to creditors, for in no event was this property subject to their demands. It is true that complainants acted under the impression that it was, but this did not make it so liable. The statute declares only those conveyances to be void whereby property subject to be taken by creditors is conveyed. It is not the unlawful intent alone, but the unlawful intent coupled with the unlawful act which it condemns.

To bring a case within the terms of the statute there must be a creditor to be defrauded, a debtor intending to defraud, and a conveyance of property which is appropriable by law to the payment of the debt due. As to so much of the property, therefore, as the creditors could in no event have reached, there was no fraudulent conveyance, because there was no

wrongful conveyance.   There was a bad motive, but no illegal act, and it is only to such that the law applies.   If, therefore, a conveyance is made to defeat a debt where none exists, or of property which could not be subjected by the creditor, and there is a contract, otherwise valid, that the conveyance shall be treated as a mortgage, that the grantee shall reconvey, he cannot defeat a suit brought to enforce such agreement on the ground alone that the plaintiff intended to make a fraudulent conveyance.   *Denman* v. *Denman*, 4 Ala. 521 ; *Brady* v. *Ellison*, 2 Hayw. 348 ; *Smith* v. *Bruser*, 2 Hayw. 296 ; *Boyd De La Montaigne*, 73 N. Y. 498.

But upon still another ground the demurrer should have been overruled.   The rule appealed to by the defendant, that when parties are in *pari delicto* the court will lend its aid to neither, is subject to the exception that where public interest requires its intervention relief will be granted, though the result may be that the property will be restored to or a benefit derived by a plaintiff who is in equal guilt with the defendant. In such cases the guilt of the respective parties is not considered by the court, which looks only to the higher right of the public, the guilty party to whom relief is granted being only the instrument by which the public is served.   *St. John* v. *St. John*, 11 Ves. 535 ; *Hatch* v. *Hatch*, 9 Ves. ; *Morris* v. *MacCullock*, 2 Eden, 190 ; *Roberts* v. *Roberts*, 3 P. Wms. 65 ; *Smith* v. *Bromly*, Doug. 695 ; *Browning* v. *Morris*, Cowp. 790 ; *Osborne* v. *Williams*, 18 Ves. 379 ;   *W.* v. *B.*, 32 Beav. 574 ; *Ford* v. *Harrington*, 16 N. Y. 285.

Courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction ; some security afforded to a class of persons entitled to peculiar protection, or some safeguard thrown around a relationship which is an object of the law's jealous consideration.   But it may be safely asserted that it will be of far greater protection to the public, that one occupying the relation of guardian,

trustee, executor, or administrator, shall in all cases be compelled to return any property or profit secured by his frauds from those whose interests he is bound to protect, than to permit him, under any circumstances, to shelter himself behind the plea that those defrauded by him were themselves guilty of an equal wrong.

The decree is affirmed.