## B. J. MOORE v. M. A. JORDAN.

1. TRUST. *Not resulting from voluntary conveyance, when.*

No implied trust can result in favor of a grantor from a deed in which a pecuniary, though nominal, consideration is stated, the habendum of which declares a use to the grantees, who are children of the grantor, and which contains a covenant of warranty.

2. VOLUNTARY CONVEYANCE. *Suit to cancel. Fraud. Trust relation. Case in judgment.*

J. came into possession of an estate which was liable to the State on a defaulting officer's bond. The administrator of such estate, in order to make a more favorable settlement with the State, or else to compel the co-sureties to pro rate the liability on the bond, induced J. to convey this property to his (the administrator's) wife and to M., both daughters of J., the administrator promising that they would subsequently reconvey to J.

M. took no part in the scheme, except to receive the conveyance. Afterwards the wife of the administrator did reconvey, but M. refused so to do. J. filed a bill asking that her conveyance to M. be cancelled. *Held*, that J. was not entitled to the relief asked, either upon the ground that the conveyance was procured by fraud or imposition practiced upon the grantor, or that the conveyance was made at the instance of one occupying a trust relation and the grantees are volunteers. There was no fraud on the part of M. in securing the conveyance; and M., though a volunteer, is not one claiming through the administrator, at whose instance the conveyance was made, nor was the scheme concocted for the administrator's benefit.

APPEAL from the Chancery Court of Tate County.

HON. J. G. HALL, Chancellor.

One Stephen Williams was one of several sureties on the bond of a defaulting officer. Williams died. Mrs. M. A. Jordan, by inheritance and conveyance, came into possession of his estate. One Grayson, the son-in-law of Mrs. Jordan, was the administrator of William's estate. Grayson, in order to avoid the payment of the total amount of the default, induced Mrs. Jordan to convey the property acquired from the estate of Williams to his wife and Mrs. B. J. Moore, another daughter of Mrs. Jordan. This deed of conveyance recites: "I, M. A. Jordan, in consideration of the natural love and affection I have for A. A. Grayson and B. J. Moore, and also in consideration of the sum of one dollar in hand paid, have this day granted, bargained and sold to the said A. A. Grayson and B. J. Moore, * * * * to have and to hold to the said A. A. Grayson and B. J. Moore, their heirs and assigns forever. And I hereby covenant to and with the said A. A. Grayson and B. J. Moore to forever warrant and defend the title to the same free from the claim of all and every person or persons claiming the same whomsoever." Grayson promised that the land should be reconveyed when the object of such conveyance should be accomplished. Afterwards, Mrs. Grayson did reconvey to Mrs. Jordan, as promised by her husband ; but Mrs. Moore declined so to do.

Mrs. Moore then filed a bill to compel Mrs. Jordan to account for the rents and profits of the land for the time the same has been occupied by Jordan since the conveyance. Mrs.

Jordan answered, denying her liability to account, made her answer a cross-bill, and asked that her conveyance to Mrs. Moore be cancelled. The Chancellor dismissed the original bill and granted the relief asked in the cross-bill: Mrs. B. J. Moore appealed.

*Oglesby & Taylor*, for the appellant.

In order to make such disposition of the case as was made, the chancellor must have reached one of two conclusions.

First. That the deed of Mrs. Jordan to Mrs. Moore and Mrs. Grayson was not fraudulent; was not made to hinder, delay and defraud creditors; or,

Secondly. That whether the deed was fraudulent or not, it was caused by the *undue influence* of Grayson, the administrator of Stephen Williams' estate. Neither position being maintainable in the face of the uncontroverted facts of the case, and of well settled principles of law that are applicable to it.

It is clear from the evidence that the grantor intended to make a fraudulent conveyance, that is, that she intended the conveyance should operate to hinder, delay and defraud creditors, or her creditor, the State of Mississippi.

Undue influence is presumed only where a confidential relation exists, and such relation is availed of by the party using it to secure some good to himself. Kerr on F. & M., 195; also 331, 339 and 340 tp. In such cases the law may require a full showing of fairness, *bona fides* between the parties, before it will uphold the transaction. But such is far from being the case now before this court.

Mrs. Grayson has conveyed her interest back, and if injury was done by the influence of the administrator, it applied and could apply only to her. Mrs. Moore was no party to the scheme.

*Shands & Johnson*, for the appellee.

1. The only argument that can be made for sustaining this deed of April 9th, 1883, from M. A. Jordan to her two daughters, is that it was contrived and executed to defraud creditors. She who would obtain equitable relief must come into court with clean hands. That this conveyance is the result of the solicitations of the administrator, and based upon his promises to re-

convey cannot be denied; nor can it be denied that this deed should at once be canceled upon her application, unless the grantor has lost this right by participation in a fraud. Let us examine the facts upon this point. It was the design of the administrator who formulated the plan for these conveyances, not to entirely defeat the payment of the Matthews bond debt, but to put the estate in a condition to compel the other bondsmen to pay their shares of it. The object in view, the compelling of the joint debtors to bear their part of the burden, ▮▮▮▮ legal and proper object. It was the duty of the administrator to collect back from the joint debtors, as far as they were liable therefor, what the estate in the first instance might be compelled to pay. The object of the plan, as stated by the witnesses, is not subject to criticism, it is only what was done in carrying it out. It may be truly urged that it is not a proper and legal method of enforcing contribution for one of the joint debtors to screen his property from the debt for which with others he is equally liable. The method pursued to accomplish a proper end was the result of a mistake of law, and "it is one I apprehend, which courts of equity will relieve against, especially between parties thus situated." *Boyd* v. *De La Montagnie*, 73 N. Y., 498; Pomeroy's Eq., Vol. II, Sec. 848.

2. When the conveyance is induced by one who stands in a confidental relation it can make no difference in the application of the rule, whether it be to himself, a member of his own family, or a third person. "When one divests himself of his property or estate without receiving an equivalent, it is incumbent on the person who receives or profits by the gift to give such an account of the transaction as will satisfy a Chancellor that the donor was of sound mind, and had a full and accurate understanding of the nature of the act and the consequences it would produce. This rule is aside from the doctrine of undue influence, and must be observed although the donee was an entire stranger to the gift and could have had no share in producing the mental condition of which it was the fruit. Much more may be required where one accepts a benefaction from another who is subject to his control or influence, and it may then be incumbent on the donee to show that he did not induce or prompt the act,

and that it was the spontaneous and unforced growth of the donor's mind. If such evidence be not adduced, and the gift is out of proportion to the donor's means, or will be prejudicial to those who have a paramount claim on his bounty, a Chancellor will infer that it is the result of undue influence, although there may be no direct proof." *Huguenin* v. *Baseley*, 14 Vesey, 273. This authority applies with full force to the case at bar. It is true, this administrator, son-in-law and confidential agent, did not pe this deed to be made directly to himself, but he did have it made to his wife jointly with complainant. Complainant being a mere volunteer, stands exactly in the position Mrs. Grayson would occupy were she resisting the cancellation of this deed. *Davoue* v. *Fanning*, 2 Johns. Chancery Reports, 252; *Cameron* v. *Lewis*, 56 Miss., 76. Grayson, standing as he does, in this trust relation to the grantors in these deeds, though they participated with him in a fraudulent design of defeating the claims of creditors of the Williams estate, these deeds cannot be set up against them. The law looks with much disfavor upon conveyances made with intent to defraud creditors, but it guards with closer scrutiny and jealous care the sanctity of trust relations. While the success of any fraudulent scheme against creditors is opposed to our natural sense of justice, it is much more shocking to the enlightened judicial conscience that the frauds of an administrator in diverting from the heirs, the estate which he has in charge should reach a successful culmination. What Court would allow an administrator or guardian to set up in his own defence when called on to turn over to the proper owners the trust funds, that the property had been donated to him with the fraudulent purpose of defeating just debts? If he, himself, is not allowed this defence, upon what reason can it be allowed to those who are the willing and voluntary beneficiaries of his breach of trust? *Boyd* v. *De La Montagnie*, 73 N. Y., 498; *O'Connor* v. *Ward*, 60 Miss., 1037; Darlington's Appeal, 86 Penn. St., 512.

*Eugene Johnson*, of counsel for appellee, argued the case orally.

COOPER, C. J., delivered the opinion of the Court.

The rule that a trust resulted to the grantor upon a voluntary conveyance, according to the common law forms of feoffment, grant, fine or recovery, etc., where no consideration is expressed or implied, and no trust is declared, and the circumstances rebut the presumption of a gift, seems not to apply to modern conveyances. 1 Perry on Trusts, 184.

Mr. Pomeroy thinks it would apply to such conveyances if the deed "simply contains words of grant or transfer, and does not recite nor imply any consideration, and does not, in the *habendum* clause or elsewhere, declare any use in favor of the grantee, and the conveyance is not in fact intended as a gift." 2 Pomeroy's Eq., 1035.

However this may be, it is evident that in the case before us no trust resulted to the grantor from the deed, for it recites a pecuniary consideration, though nominal. *Russ* v. *Mebius*, 16 Cal., 350; *Squire* v. *Harder*, 1 Paige, 494; *Leman* v. *Whitley*, 4 Russ., 423; *Philbrook* v. *Delano*, 29 Mo., 410; *Graves* v. *Graves*, 29 N. H., 129; *Groff* v. *Rohrer*, 35 Md., 327; 2 Story's Eq., 1199. The *habendum* declares a use to the grantees, who are the children of the grantor, and there is a covenant of warranty. 2 Pomeroy's Eq., 1035; *Gould* v. *Lynde*, 114 Mass., 366; *Bragg* v. *Geddes*, 93 Ill., 39; *Groff* v. *Rohrer*, 35 Md.; *Farrington* v. *Barr*, 36 N. H., 86; *Stucky* v. *Stucky*, 30 N. J. Eq., 546.

There is no pretence of a written declaration of trust by the grantees in favor of the grantor, and one by parol would be void. Code, Section 1296.

There are, therefore, but two other grounds upon which the relief granted by the court below can be supported: 1. That the conveyance was procured by fraud or imposition practiced upon the grantor; 2. That the conveyance was made at the instance and procurement of one occupying a position of trust and influence, and that the grantees are volunteers.

On the first ground it is sufficient to say that the record is entirely free of evidence of any fraud against the grantor. The facts shown are that she was the owner of the estate of her deceased father, one-half of which came to her by descent and distribution and the other by conveyance from her mother,

the widow. The intestate had been surety upon the official bond of an officer who had defaulted, and it was supposed by the administrator of the estate that a conveyance of the estate to third persons would be effectual to coerce a favorable compromise from the State, or would compel other sureties, who had made fraudulent conveyances of their estates to avoid liability on the bond, to contribute their proportions in payment of the default. At his suggestion and for these purposes the conveyance was made. Mrs. Moore took no part in the scheme other than to receive the conveyance, and the only fraud that can be imputed to her is that she now declines to reconvey the property, as the administrator and the grantor in the deed thought she would do.

If this is such a fraud as will warrant the interposition of a Court of Chancery, the statute of frauds will be practically obliterated, since all parol contracts from which a trust would arise, if they were in writing, will be enforced upon the ground that it is a fraud not to comply with them.

We do not ignore or deny the proposition that a Court of Chancery will not permit a fraud to be consummated by reliance upon the statute of frauds; as where one takes an absolute conveyance of property which is intended as a mortgage, or takes advantage of a relation of trust or confidence, or by false representations or concealment, or by unfair devices or schemes, procures a conveyance to be made; or where advantage is taken of the mental infirmity of the grantor. These and other illustrations belong to a class of cases in which fraud (or in the eye of a court of equity its equivalent) co-exists with the conveyance, infects the conscience of the grantee, and disables him from asserting the validity of the instrument which is the foundation of his title, or from interposing the statute of frauds as a protection against his parol contract to convey. But such is not the case here. There is no fraud shown except that contemplated by the grantor in protecting the estate from the claim of the State. The manifest purpose of Mrs. Jordan was to make a conveyance that should convey her title, and she relied upon an implied promise to reconvey to her on demand. If this promise had been an express parol one it would have been unenforceable

because of the statute of frauds; it certainly cannot be stronger as an implied one. The danger which the statute of frauds intends to protect against is that of permitting titles held under solemn conveyances from being hampered, clogged or destroyed by oral evidence, by mere parol declarations or admissions, which are so easy of fabrication and so difficult to disprove. To secure against such danger the law wisely provides that declarations of trust shall be made and manifested by a writing, and closes the doors of the courts to those who assert an equitable title resting wholly by parol. But courts do not permit one to lay a trap for another, and by fraudulent conduct inveigle him into a position in which this statute is fatal to him, and then avail of its protection. The case of *O'Connor* v. *Ward*, 60 Miss., 1025, illustrates the principle referred to. O'Connor, who was the confidential friend and adviser of the Wards, by false representations of the condition of the estate of which they were heirs, and by promising to hold the property to their use and benefit, procured absolute conveyances to be made by them. Having secured the property, he refused to reconvey or to execute the trusts he had agreed to assume. When suit was brought he defended upon the ground that the conveyance was to defraud creditors, and also because there was no written declaration of trust. Under these circumstances we held that he could avail of neither defence; that his title was procured by fraud upon the grantors, and, therefore, that the conveyance should be annulled. But that case is widely different from this, in that here there is no fraud in the procurement of the deed; no confidence abused; no position of trust perverted to obtain the deed. Without announcing an assent to the position of counsel for Mrs. Jordan, that the conveyance made by her was not a fraudulent one, because it could in no degree hinder, delay or defraud the creditors of the decedent, whose debts became fixed upon it by his death, its correctness might be conceded without changing the result. The most that can be argued is that the *mala mens* is not an obstacle to the relief she seeks. It certainly cannot be invoked as the foundation and root of an independent equity that would not spring from the transaction stripped of this element. What, then, is left to the

complainant? Nothing but that she has made a voluntary conveyance to her daughter, who, because it is voluntary, is under an implied promise to reconvey the property, but refuses so to do. This is, we think, insufficient to entitle her to relief.

Nor do we think that relief should be afforded because the administrator, Grayson, suggested the scheme in pursuance of which the conveyance was executed. He got no benefit by it, nor was it intended that he should. It is true that Mrs. More is a mere volunteer; but she is not a volunteer claiming under him, nor in a scheme concocted for his advantage. In the cases relied upon by counsel, and those therein referred to, some benefit passed to the confidential adviser or through him to another.

*Rhodes* v. *Bate*, L. R. I. Ch. App. Cas., 252; *Gresley* v. *Mousley*, 4 Deg. & J., 78; *Archer* v. *Hudson*, 7 Beav., 551; *Huguenin* v. *Baseley*, 14 Ves., 273; *Gibson* v. *Jeyes*, 6 Ves., 266; *Dent* v. *Bennett*, 4 My. and Cr., 269; *Maitland* v. *Irving*, 15 Sim., 437; *Maitland* v. *Backhouse*, 16 Sim., 57.

These were cases in which without regard to *bona fides* of the person occupying the confidential relation relief was afforded.

Where fraud on the grantor is perpetrated, those who acquire the benefit of the fraud, though not claiming through the confidential adviser, and though he secures no benefit to himself, have been decreed to make restitution.

*Bridgeman* v. *Green*, 2 Ves., 627; *Luttrell* v. *Waltham*, 9 Ves., 638.

But we have found no case from which it would follow that the conveyance here involved should be vacated. Grayson and Mrs. Jordan, for the purpose of consummating a scheme which they supposed would hinder, delay, and defraud creditors, selected Mrs. Moore as one of the persons to whom the conveyance should be made. His advice was, we may assume, implicitly followed as to the details by which the plan should be made effective; but that it was does not affect ·the validity of the conveyance as between grantor and grantee, nor commend the grantor to a more favorable consideration by a Court of Equity. On the whole record we see no reason why a Court of Equity should interfere to disturb the rights of the parties as fixed by the deed.

*The decree will be reversed and cause remanded.*