KIDD, et al. *v.* KIDD.

Division B. Jan. 8, 1951.

No. 37659 (49 So. (2d) 824)

466

Thos. E. Pegram, for appellants.

Jno. B. Farese, and Smith & Hurdle, for appellee.

Holmes, C.

This appeal involves a controversy between the appellee and the appellants, arising out of a conveyance of

land made by the appellee to his daughters, Thelma Kidd and Dorethea Kidd, the latter being one of the appellants. No creditors are here involved.

It is the contention of the appellants that the grantor in the deed executed the same with the intention to defraud creditors, real or imaginary, and that therefore, under Section 265 of the Mississippi Code of 1942, it is void as to creditors but good as to the grantees therein, and that in view of the evil purpose of the grantor, and under the maxim "He who comes into equity must come with clean hands", he is precluded in a court of equity from any relief with respect to the aforesaid conveyance.

On the other hand it is the contention of the appellee that the conveyance was obtained as a result of a fraud perpetrated upon him by his wife and daughters, and that the same is wholly void and should be cancelled, or in the alternative, that he is entitled to a lien on the land for the unpaid recited consideration in the event the court should hold the conveyance to be valid.

Appellants sought by this action to have the land involved partitioned by a division in kind, if susceptible of such division, or otherwise, by a sale and division of the proceeds, and further sought to recover of the appellee a reasonable rental for use and occupation. The appellee by cross-bill sought the full cancellation of the conveyance upon the ground that it was obtained from him through fraud.

The trial court sustained the conveyance and ordered the land sold and the proceeds distributed for the purposes of partition, but denied any recovery for rent for use and occupation, and fixed a lien on the land in favor of the appellee for $1,500, the amount of the unpaid recited consideration. From this decree the appellants prosecute this appeal, and the appellee cross-appeals. A brief statement of the relevant facts as disclosed by the record is necessary to a proper understanding of the legal principles to be applied.

On March 15, 1939, the appellee, W. L. Kidd, owned approximately 179 acres of land in Benton County, Mississippi, on which he and his wife, Mrs. Eliza Kidd, and their two daughters, Dorethea and Thelma, had lived for a number of years. When the daughters reached maturity, Dorethea continued to live in the home with her parents, but Thelma obtained employment in Memphis, returning home from time to time on visits. Appellee was an uneducated man, unable to read and write, and possessed no business experience. His wife and daughters were of good education and far surpassed him in intellect and judgment. One of his daughters taught school for awhile, and his wife was referred to by one witness as "cunning", as being able to "look ahead and see what is coming", and as being an "educated woman" and a "good business woman". Appellee's wife and daughters transacted all of his business and affairs, and he reposed confidence in them and relied upon their superior knowledge, experience, and judgment in all matters pertaining to his affairs. On a number of occasions, prior to March 15, 1939, appellee's wife and daughters falsely represented to him that he was going to be sued, and that as a consequence he would lose his land unless he conveyed it to his daughters, and they urged him to so convey it in order to prevent such loss, representing that when the danger of suit was past the daughters would convey the land back to him.

Relying upon these representations, and believing them to be true, and reposing confidence in his wife and daughters and trusting their superior judgment and experience, appellee, on March 15, 1939, conveyed his land by warranty deed to his daughters, Dorethea and Thelma, for a recited consideration of $1,500 cash, no part of which was or ever has been paid.

Some seven or eight months after the execution of the deed, Thelma died and appellee's wife deserted him and moved with her daughter, Dorethea, to Memphis, leaving appellee alone in possession of the property. Later ap-

pellee obtained a divorce from his wife and remarried. Appellee continued in possession of the property, paying the taxes thereon and exercising control thereof without any assertion of right thereto by appellants until the year 1946, when this action was initiated by one H. L. Taylor by the filing of a bill for partition. Taylor alleged that he was the owner of an undivided ⅚ interest in the property under a conveyance from Mrs. Eliza Kidd and Dorethea Kidd, dated August 3, 1946, and that appellee was the owner of an undivided ⅙ interest therein. These respective interests were arrived at on the theory that Thelma Kidd acquired an undivided ½ interest under the conveyance from appellee, and that upon the death of Thelma intestate her interest descended in equal proportion to Mrs. Eliza Kidd and Dorethea Kidd and appellee, W. L. Kidd.

By appropriate proceedings Mrs. Eliza Kidd and Dorethea Kidd were made parties to the action. Later Taylor reconveyed to Mrs. Eliza Kidd and Dorethea Kidd, who, by appropriate pleadings pursued the action for partition, resulting in a decree as hereinbefore stated.

An unusual feature of the case is that both sides undertook to prove that the conveyance was a fraudulent conveyance. Appellants sought to show that it was a fraudulent conveyance in that it was made for the purpose of defrauding creditors, and the appellee sought to show that it was fraudulently obtained through false representations, and therefore wholly void. The chancellor found as a fact that appellee believed he was going to lose his land as a result of the representations claimed to have been falsely made, and that prompted thereby he conveyed his land for the purpose of placing it beyond the reach of his creditors, real or imaginary. On this finding the chancellor held that the conveyance was within the statute of frauds, Section 265, Mississippi Code 1942 and void as to creditors but valid as to the grantees. He further held that in view of appellee's evil purpose in making the conveyance, he was precluded

from relief under the maxim, "He who comes into equity must come with clean hands". It is clear from the record that there was no creditor. It also appears that 160 acres of appellee's 179 acres were exempt as a homestead. We think therefore that the learned chancellor failed to apply the correct principle of law to the facts which he found to be true. There was no creditor to be defrauded, and 160 acres of appellee's 179 acres were not appropriable by law to the payment of debts.

In the case of O'Conner v. Ward, 60 Miss. 1025, the Court said: "To bring a case within the terms of the statute there must be a creditor to be defrauded, a debtor intending to defraud, and a conveyance of property which is appropriable by law to the payment of the debt due. As to so much of the property, therefore, as the creditors could in no event have reached, there was no fraudulent conveyance, because there was no wrongful conveyance. There was a bad motive, but no illegal act, and it is only to such that the law applies." The conveyance, therefore, could not be fraudulent as to creditors, since there were no creditors to defraud. Accepting as true the chancellor's finding that appellee intended to defraud creditors, the most that can be said is that his motive was bad. It was followed by no illegal act, since no creditors were defrauded because there were no creditors.

The Court again said in the O'Conner case, supra, "It is not the unlawful intent alone, but the unlawful intent coupled with the unlawful act which it condemns." It follows from what has been said that appellee cannot be denied relief upon the ground that he was in *pari delicto* with the grantees in the deed. He charged that his daughters, as well as his wife, were parties to the false representations which resulted in the conveyance. Although his only surviving daughter, Dorethea, was present in court during the trial, she did not deny this charge. It appears, therefore, that appellee's daughters, who were the grantees in the deed,

were parties to the fraud in the procurement of the deed, and that appellee was the victim of the scheme, rather than a conspirator equally guilty with his daughters. Hence he was in *delicto,* but not in *pari delicto* with his daughters.

The Court again aptly said in the O'Conner case, supra: "We do not agree with the proposition announced by Mr. Bump in his work on Fraudulent Conveyances, that where a person has sufficient capacity to contract, and makes a conveyance with intent to hinder, delay, or defraud his creditors, a court of equity will not inquire into the degrees of guilt between the grantor and the grantee. The rule is not universal, and, as stated, is not supported by the authorities. In Osborne v. Williams, 18 Ves. 382, a father and son had entered into an agreement which was in contravention of a positive statute; the contract had been executed by the son and the father had derived a profit from its execution; both parties having died, a suit was instituted by the representatives of the son against those of the father for an account, and relief was granted upon the ground that while the parties were in *delicto* they were not in *pari delicto.*"

We are accordingly of the opinion that under the facts of this case the deed in question is not within the terms of the statute of frauds, Section 265, Mississippi Code of 1942, and that appellee is not to be denied relief in a court of equity because of his evil purpose, coupled with no illegal act, in the execution of the deed.

This brings us to a consideration of appellee's contention that the deed was procured as the result of a fraud perpetrated upon him, and is therefore wholly void and should be cancelled. Appellee testified that his wife and daughters repeatedly represented to him that he was going to be sued and would lose his property unless he conveyed it to his daughters, and that his daughters promised to convey it back to him when the danger of suit was past. There was no denial of this by the

daughter, Dorethea, who was present in court during the trial. The chancellor found that as a result of these false representations appellee actually believed that he was going to lose his land, and that he was prompted by such representations to make the conveyance. The evidence shows that appellee was unable to read and write, and that his wife and daughters were superior to him in intellect, judgment, and experience, and transacted all of his business and affairs; that he reposed confidence in them, and that thus relying upon them he was moved to execute the conveyance. It is clear from the record that a relation of trust and confidence existed between appellee and his wife and daughters. That appellee executed the conveyance in reliance upon the false representations made to him by his wife and daughters, and as a result of the confidence which he reposed in them, abundantly appears from the record.

It is significant that appellee's wife and daughters deserted him a few months after obtaining the conveyance, and failed to reconvey the property back to him, although no part of the recited consideration of $1,500 was or ever has been paid. The record is amply sufficient to establish the fact that the representations that appellee was going to be sued were intended and accepted as representations of fact, and that appellee relied upon them and upon his confidence in his wife and daughters, and that he was induced thereby to make the conveyance, and that the facts of the case are such as to entitle him in a court of equity to have the deed cancelled upon the ground that fraud was practiced upon him in its procurement. We are not unmindful of the general rule that predictions or promises as to future events are not ordinarily sufficient upon which to base actionable fraud, but this general rule has no application where, as here, a relation of trust and confidence exists between the parties, or where, as is deducible from the evidence in this case, the future prediction or promise is part of a

general scheme or plan existing at the time to induce a person to act.

"The fact that statements relate to the future will not preclude liability for fraud if such statements were intended and accepted as representations of fact and involved a matter peculiarly within the speaker's knowledge, or as to which he professed to have special knowledge . . . .

"Where a relation of trust and confidence exists between two parties, so that one of them places peculiar reliance in the other's trustworthiness, the latter is liable for representations as to future conduct, and not merely as to past facts.

"A future promise may be fraudulent when it is part of a general scheme or plan, existing at the time, to induce a person to act, as he otherwise would not, to his injury." 37 C. J. S., Fraud, Section 11, pages 235-236.

We have given careful consideration to the case of Jordan v. Moore, 65 Miss. 229, 3 So. 737, upon which appellants rely, but we find the facts of that case wholly different from the facts of the case at bar, and therefore not applicable. In that case, as was stated in the opinion, there was no fraud in the procurement of the deed, no confidence abused, no position of trust perverted to obtain the deed.

We accordingly conclude that the decree of the court below on both direct and cross-appeal should be, and it is, reversed, and judgment rendered here for the appellee and cross-appellant, cancelling the deed of conveyance here involved.

Reversed and rendered.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated the case is reversed and rendered.