# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00813-SCT

*JAMES E. PARKER, SR.; BEVERLY A. PARKER; JAMES E. PARKER, SR.;JANICE R. MORELAND HONEYCUTT; DEBRA A. BROXON; DORIS O. ROGERS; GLORIA VAN AXELSON; MONA ROSA WHITE; PARKER ENERGY RESOURCES, A FLORIDA CORPORATION; AND PARKER FAMILY TRUST, JAMES E. PARKER, JR., TRUSTEE*

*v.*

*DAN LIVINGSTON; MELVIN BURKLOW; ROBERT L. BURKLOW; EDDIE R. BURKLOW; AND JAMES WILSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/1998 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | REBECCA G. TAYLOR |
| ATTORNEY FOR APPELLEES: | LOUIS B. LANOUX |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED-03/07/2002 |
| MOTION FOR REHEARING FILED: | 4/22/2002; denied 6/6/2002 |
| MANDATE ISSUED: | 6/13/2002 |

**BEFORE McRAE, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This matter is an appeal from the judgment of the Chancery Court of Jefferson Davis County in which the chancellor set aside various transfers of mineral deeds as fraudulent.

## FACTS AND PROCEEDINGS BELOW

¶2. On June 6, 1990 Dan Livingston, Robert L. Burklow and Melvin Burklow each obtained a summary final judgment in the chambers of the Circuit Court of Santa Rosa County, Florida, against James E. Parker, Sr. ("Parker"). These judgments were for various loans executed between October, 1986 and May, 1987. Nine days later, James Wilson and Eddie R. Burklow obtained similar judgments in the Circuit Court of Santa Rosa County. These individuals will be collectively referred to as the "Plaintiffs." Each judgment was recorded in Florida on the same day it was rendered.

¶3. Later the Plaintiffs learned that prior to the entry of the Florida judgments, Parker had transferred certain mineral interests in Mississippi to his wife Beverly and other family members. The Plaintiffs filed papers in the circuit clerk's offices for Lawrence, Lincoln, Jefferson Davis and Simpson counties in November and December of 1991. This was done pursuant to Mississippi's enrollment of foreign judgments statute, Miss. Code Ann. § 11-7-305 (Supp. 2001). Unbeknownst to the Plaintiffs at the time, the circuit clerks did not mail the accompanying notices of filing required by the statute.

¶4. In January of 1992, the Plaintiffs filed a complaint in the Chancery Court of Jefferson Davis County seeking to set aside as fraudulent, certain conveyances of Mississippi mineral and property interests by Parker to other family members. Named as defendants were Beverly A. Parker, James E. Parker, Sr., Janice R. Moreland Honeycutt, Debra A. Broxon, Doris O. Rogers, Gloria Van Axelson, Mona Rosa White, Parker Energy Resources, A Florida Corporation, and Parker Family Trust, James E. Parker, Jr., Trustee (collectively "Defendants"). Two years later, on January 11, Parker filed for bankruptcy in the U.S. Bankruptcy Court for the Northern District of Florida. All proceedings in Mississippi were stayed. On August 12, 1994, Parker was discharged from Bankruptcy Court. Shortly thereafter the automatic stay was lifted, which enabled the Plaintiffs to continue their fraudulent conveyance action in Mississippi.

¶5. In April 1997, the Jefferson Davis County chancellor issued an order requiring the Plaintiffs to re-enroll their Florida judgments. The chancellor found that the enrollments executed in 1991 did not comply with § 11-7-305. The chancellor reasoned that because the respective clerk's offices had failed to mail notices of the filing to the defendant, the Florida judgments were not liens on the Mississippi properties. The chancellor gave the Plaintiffs thirty days in which to re-enroll their judgments. On April 10 the Plaintiffs filed a "Notice of Mailing of Foreign Judgments" with the Circuit Clerk's offices for Lawrence, Lincoln, Jefferson Davis and Simpson counties.

¶6. Fearing the validity of their Florida enrollments might also be attacked, the Plaintiffs attempted to re-enroll their judgments in Santa Rosa County, Florida on June 5, 1997. According to a letter dated July 17th from the Santa Rosa County clerk's office, the Plaintiffs filed copies of the 1990 judgments, but failed to file the accompanying affidavits stating the names and current addresses of the judgment creditors as required by Florida law. Within two weeks, the Defendants filed a motion to dismiss in the Jefferson Davis County Chancery Court based upon the Plaintiffs' purported failure to properly enroll their judgments.

¶7. Meanwhile, the Plaintiffs filed a subsequent motion to reconsider the April 7th order based upon a procedural defect in the order's issuance. The Plaintiffs argued that the order did not comply with the Mississippi Rules of Civil Procedure, because the opposing counsel had failed to provide them with a copy prior to its being entered by the court. Both motions were considered by the chancellor who issued a ruling setting aside the April 7th order. The Defendants' motion to dismiss was denied, and trial was set for December 11, 1997. In the interim the Plaintiffs filed a motion for sanctions against the defendants, James E. Parker and Beverly Parker.

¶8. On December 11, 1997, the fraudulent conveyance suit was tried in the Chancery Court of Jefferson Davis County. At the conclusion of the proceeding the chancellor requested additional briefs and documents from the parties. No ruling was issued until approximately one year later on December 15, 1998. In his final judgment, the chancellor set aside the various deeds as prayed for in the Plaintiffs' complaint. The chancellor also declared that the plaintiffs had fully complied with the provisions of § 11-7-305.

¶9. The Defendants filed a motion to dismiss, for reconsideration and new trial, asserting that the Plaintiffs' complaint should have been dismissed because they failed to petition the Supreme Court for a writ of mandamus in accordance with Rule 15 of Mississippi Rules of Appellate Procedure. The chancellor observed that at the close of the case in December 1997, requests were made of both parties to provide briefs and authorities for their respective positions. This request, the chancellor noted, made calculating the moment the matter was actually taken under advisement unclear. The chancellor further noted that manifest injustice would result if the Plaintiffs' case was dismissed. The Defendants' motion was thereafter denied. While the chancellor found in the Plaintiffs' favor on the merits, he failed to rule on the motion for sanctions. Both parties now seek review from this Court.

## STANDARD OF REVIEW

¶10. A limited standard of review is employed by the Supreme Court in reviewing the decisions of a chancellor. *Reddell v. Reddell*, 695 So.2d 287,288 (Miss. 1997). A chancellor's findings will not be disturbed on review unless he abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. *Bank of Miss. v. Hollingsworth*, 609 So.2d 422, 424 (Miss.1992). For questions of law, the standard of review is de novo. *Consolidated Pipe & Supply Co. v. Colter*, 735 So.2d 958, 961 (Miss.1999).

## DISCUSSION

### I.

### WHETHER THE JUDGMENTS ON WHICH PLAINTIFFS' CLAIMS WERE BASED WERE VOID IN THE ISSUING STATE.

¶11. The Defendants first argue that the foreign judgments upon which the Plaintiffs' claims are based are void in the issuing state of Florida because the Plaintiffs did not properly re-record their judgments in Florida. The Defendants cite § 55.10 of the Florida statutes. It reads,

> A judgment, order, or decree becomes a lien on real estate in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of the recordation, and it shall be a lien for a period of seven years from the date of the recording provided that the judgment, order or decree or separate affidavit is recorded simultaneously with the judgment, order, or decree stating the address of the person who has a lien as a result of such judgment, order or decree. A judgment, order or decree does not become a lien on real estate unless the address of the person who has a lien as a result of such judgment, order or decree is contained in the judgment, order or decree or an affidavit with such address is simultaneously recorded with the judgment, order or decree.

Fla. Stat. Ann. § 55.10(1) (West 1994).

¶12. The Defendants admit that the Plaintiffs obtained and recorded their judgments on June 6 and 15, 1990. The Defendants also acknowledge that prior to the lien's expiration on June 5, 1997, the Plaintiffs attempted to re-record their judgments in Florida. The fatal error cited by the Defendants was the Plaintiffs' failure to attach certain affidavits required by law. The Defendants again cite § 55.10 of the Florida statutes. It states in pertinent part that,

The lien provided for in subsection (1) may be extended for an additional period of seven years by re-recording a certified copy of the judgment, order or decree within the ninety-day period preceding the expiration of the lien provided for in subsection (1) **and by simultaneously recording an affidavit with the current address of the person who has a lien as a result of the judgment, order or decree. The lien will not be extended unless the affidavit with the current address is simultaneously recorded.**

Fla. Stat. Ann. § 55.10(2) (West 1994) (emphasis added).

¶13. The Defendants also cite *Hott Interiors, Inc. v. Fostock*, 721 So.2d 1236 (Fla. Dist. Ct. App. 1998). In *Hott*, a judgment debtor sued a judgment holder seeking a declaration that no liens had attached to the debtor's real property. The question presented to the Florida court was whether a final judgment becomes a lien on real estate when it contains the address of the plaintiff's attorney, but not the address of the plaintiff. *Id.* at 1237. This question was answered in the negative. The court reasoned that because the wording of § 55.10(1) was not ambiguous, unreasonable or illogical, it would not go beyond the statute's clear wording and plain meaning to expand its reach. *Id.* at 1238.

¶14. The Defendants urge that since the Plaintiffs failed to file the required affidavits, and since § 55.10 of the Florida statutes had been interpreted literally by the Florida courts, the lien, and consequentially the judgments obtained by the Plaintiffs had expired. This being the case, the Defendants submit that it was error for the chancellor to allow the Plaintiffs to maintain their present action in Mississippi. In further support of this position the Defendants cite § 15-1-65 of the Mississippi Code. It states in pertinent part that, "When a cause of action has accrued outside the state, and by the laws of the place outside this state where such cause of action accrued, an action thereon cannot be maintained by reason of lapse of time, then no action thereon shall be maintained in this state ..." Miss. Code. Ann. § 15-1-65 (1995).

¶15. The Plaintiffs counter with the position that the life of a judgment in the State of Florida is twenty years. They cite § 95.11 of the Florida statutes which sets forth the statute of limitations for judgments obtained in the state of Florida. It reads in pertinent part, "WITHIN TWENTY YEARS- An action on a judgment or decree of a court of record of this state." Fla. Stat. Ann. §95.11 (1) (West 1994). The Plaintiffs distinguish the Defendants' position by noting that § 55.10 of the Florida statutes relates only to preserving the lien priority of a judgment, not to the validity of the judgment itself.

¶16. This court reviews questions of law de novo. *Consolidated Pipe & Supply Co. v. Colter*, 735 So.2d 958, 961 (Miss.1999). Section 55.081 of the Florida Statutes sets forth the statute of limitations for liens arising out of judgments, orders, or decrees. It reads, "Subject to the provisions of § 55.10, no judgment, order or decree of any court shall be a lien upon real or personal property within the state after the expiration of twenty years from the date of the entry of such judgment." Fla. Stat. Ann. §55.081 (West 1994). Reading the two statutes together, it is readily apparent that Section 55.081 sets forth the maximum period in which a judgment will operate as a lien on Florida property, while Section 55.10 sets forth the procedure for extending such liens. Neither statute speaks to the expiration of the judgment itself. Section 95.11 directly addresses this issue. It provides that an action on a Florida judgment must be commenced within twenty years. Fla. Stat. Ann. §95.11 (1) (West 1994). Accordingly, the Defendants' argument is without merit.

**II.**

## WHETHER THE PLAINTIFFS FAILED TO COMPLY WITH MISSISSIPPI'S STATUTORY REQUIREMENTS FOR ENROLLING THEIR JUDGMENTS.

¶17. The Defendants next submit that the Plaintiffs' cause of action should have been dismissed because they failed to comply with Mississippi's statutory requirements for enrolling their judgments. The Defendants point to an order dated April 7, 1997, signed by the Jefferson Davis County chancellor. Because none of the respective clerk's offices had mailed notices of the filings to Parker, the chancellor held that the Plaintiffs' 1991 enrollments were ineffective. The chancellor gave the Plaintiffs thirty days to re-enroll their judgments or face dismissal of their case. Three days later, the Plaintiffs filed notices of mailing of foreign judgments in each of the clerk's offices involved in the 1991 filings. The Defendants urge that these filings were ineffective because they were unaccompanied by copies of the judgments and affidavits.

¶18. The Plaintiffs counter that the final judgment of December 15, 1998, is dispositive of this issue. In his final judgment the chancellor opined, "the Plaintiffs have complied with all requirements concerning the enrollment of judgments, and have probably gone above and beyond what the intent of said statutes were, even though various clerks have not totally conformed with the statute."

¶19. The procedure for enrolling foreign judgments is set forth in the Uniform Enforcement of Judgments Act. Miss. Code Ann. § 11-7-305 (Supp. 2001). Section 11-7-305 requires that at the time of the filing of the foreign judgment, the judgment creditor or his lawyer shall make and file with the clerk of the circuit court, as the case may be, an affidavit setting forth the name and last known post office address of the judgment debtor and the judgment creditor. *Id*. The statute further requires that the clerk mail notice of the filing of the foreign judgment to the judgment debtor at the address given and shall make note of the mailing in the docket. Alternatively, the judgment creditor may mail notice of filing of the judgment to the judgment debtor and may file proof of mailing with the clerk. *id*

¶20. In *Davis v. Davis,* 558 So.2d 814 (Miss. 1990), this Court was called upon to interpret § 11-7-305. The Court held that the procedure for properly enrolling a foreign judgment in Mississippi was as follows: (1) the judgment creditor must file an affidavit and a copy of the foreign judgment with the circuit court; (2) the circuit clerk promptly mails notice to the judgment debtor; and (3) no action may be taken for twenty days after the foreign judgment is filed. *Id.* at 818.

¶21. The chancellor's decision should be upheld. It is clear that but for the respective clerks' failures to mail notices to the defendant, the Plaintiffs' 1991 enrollments would have fully complied with § 11-7-305. Moreover, it was well within the chancellor's discretion to have found that the Plaintiffs had substantially, if not fully, complied with the statute. It would be a miscarriage of justice if this Court were to condone dismissals of plaintiffs' action, simply because a court clerk fails to perform his/her ministerial duties. One might argue that the Plaintiffs' counsel should have followed up on the matter by contacting the respective clerks to ensure that notices were mailed. However, imposing such a duty on litigants would be unduly burdensome. Accordingly, the Defendants' argument is without merit.

### III.

## WHETHER PLAINTIFFS FAILED TO PROPERLY RENEW THEIR FOREIGN JUDGMENTS IN MISSISSIPPI.

¶22. The Defendants contend that even if the Florida judgments were properly enrolled in Mississippi, the Plaintiffs' claims still fail because their judgements were not properly renewed. The Defendants cite §§ 11-7-303 and 15-1-47. Section 11-7-303 states in pertinent part that, " ... A foreign judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a judgment of a circuit court of any county in this state and may be enforced or satisfied in like manner ..." Miss. Code Ann. § 11-7-303 (1972). Section 15-1-47 states in pertinent part that,

> A judgment or decree rendered in any court held in this state shall not be a lien on the property of the defendant therein for a longer period than seven years from the rendition thereof, unless an action be brought thereon before the expiration of such time. However, the time during which the execution of a judgment or decree shall be stayed or enjoined by supersedeas, injunction or other process, shall not be computed as any part of the period of seven years.

Miss. Code Ann. § 15-1-47 (1995).

¶23. The Defendants' reliance on § 15-1-47 is misplaced because it concerns judgments that are rendered in this state. Section 15-1-45 governs the statute of limitations for foreign judgments. It states in pertinent part that, "all actions founded on any judgment or decree rendered by any court of record without this state shall be brought within seven years after the rendition of such judgment or decree and not after." Miss. Code Ann. §15-1-45 (1995). Clearly, § 15-1-47 has no application to the instant case. Although the Defendants rely upon the wrong statute, they do raise an important point. The Plaintiffs had seven years in which to bring an action on their judgments. If the fraudulent conveyance action does not qualify as an action on the judgments, then the Plaintiffs' judgments have lapsed. A discussion of this issue shall now ensue.

**(b)**

¶24. The Defendants urge that the Plaintiffs' fraudulent conveyance action is not an action founded on the Florida judgments, because a judgment is not a prerequisite to a fraudulent conveyance action. The record reflects that the Plaintiffs' fraudulent conveyance action was instituted two years after the Florida judgments were rendered. The record also indicates that no other actions were taken by the Plaintiffs to execute upon the judgments within the statutory period. The Defendants submit that since the Plaintiffs' fraudulent conveyance action was not an action on the Florida judgments, their case should have been dismissed.

¶25. The Defendants cite *Anderson-Tully Co. v. Brown,* 383 So.2d 1389 (Miss. 1980). In *Anderson-Tully*, this Court was asked to determine whether an employer who continued to garnish an employee's wages, after the expiration of the judgment upon which the garnishment was based, must reimburse said employee for the wages so withheld. *Id.* at 1389. The court opined that, according to § 15-1-47, a judgment lien expires in seven years unless suit is brought on the judgment. The Court further opined that a judgment lien is created by a final decision of a court so it can only be renewed or extended by similar process. *Id.* at 1390 (quoting *Grace v. Pierce,* 127 Miss. 831, 90 So. 590, 592 (1922)). Applying this principle to the instant case, the Defendants posit that a fraudulent conveyance action, like a writ of garnishment, is not an action on a judgment. Therefore, the Defendants maintain it was error for the chancellor to have allowed the Plaintiffs' case to continue.

¶26. The Plaintiffs submit that the fraudulent conveyance suit was brought to help in the recovery of the indebtedness underlying the Florida judgments. That debt, evidenced by the Florida judgments, is the same

debt evidenced by the Mississippi judgments created by enrolling the foreign judgments in 1991. The Plaintiffs further submit that *Anderson-Tully* is not controlling or persuasive authority in this case, because a fraudulent conveyance suit is distinguishable from a garnishment.

¶27. The express purpose of a fraudulent conveyance suit, the Plaintiffs posit, is to subject fraudulently conveyed properties to a lien created either by an existing judgment, or the lien created by the filing of the suit itself. The Plaintiffs point to *Grace v. Pierce,* 90 So. 590 (Miss. 1922), the opinion relied upon by the *Anderson-Tully*. The Plaintiffs submit that consistent with *Grace*, the fraudulent conveyance action is a similar process to that of filing another suit upon the judgment.

¶28. Section 11-5-75, gives the chancery court jurisdiction over fraudulent conveyance actions. It reads in pertinent part that:

> The chancery court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or those having judgments ...to set aside fraudulent conveyances of property resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors. The creditor in such case shall have a lien upon the property described therein from the filing of his bill except as against bona fide purchasers before the service of process upon the defendant in such bill.

Miss. Code. Ann. § 11-5-75 (1991). In *Kidd v. Kidd,* 210 Miss. 465, 49 So.2d 824 (1951), this Court held that to maintain a fraudulent conveyance action, there must be a creditor to be defrauded, a debtor intending to defraud and a conveyance of property which is appropriable by law to the payment of the debt due. *Id.* at 826. The chancellor found all of these elements present in ruling to set aside the various conveyances here.

¶29. The Defendants argue that the Florida judgments, and the underlying debt they represent, have expired because the Plaintiffs failed to file an action on those judgments within seven years. Since there is no debt, there is no creditor/debtor relationship and therefore, no actionable suit. Assuming arguendo that the Florida judgments had expired, the underlying debt remained. Therefore it was still within the chancellor's power to entertain the fraudulent conveyance action, as all of the elements set forth in *Kidd* are present.

¶30. Moreover, even if the fraudulent conveyance action was not an action on the Florida judgments, the statute of limitations could not have run. Section 15-1-57 provides that:

> when any person shall be prohibited by law, or restrained or enjoined by the order, decree, or process of any court in this state from commencing or prosecuting any action or remedy, the time during which such person shall be so prohibited, enjoined or restrained, shall not be computed as any part of the period of time limited by this chapter for the commencement of such action.

Miss. Code Ann. § 15-1-57 (1991). (emphasis added). Accordingly, the Defendants' argument is without merit.

## IV.

### WHETHER THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF CONSIDERATION PURPORTEDLY GIVEN BY BEVERLY PARKER.

¶31. The Defendants next contend that the trial court erred in excluding evidence of consideration purportedly given by Beverly Parker for the transfers alleged by the Plaintiffs as fraudulent. The chancellor based his decision on the Defendants' failure to produce a note evidencing that the transactions involved were indeed bargained for exchanges. This Court has stated that the admission or suppression of evidence is within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Barrett v. Parker*, 757 So.2d 182, 188 (Miss. 2000); *Lackey v. Fuller*, 755 So.2d 1083, 1086 (Miss. 2000). Moreover, this Court has held that for a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. *Hansen v. State*, 592 So.2d 114, 132 (Miss.1991).

¶32. The Defendants cite *Detrio v. Boylan*, 190 F.2d 40 (5th Cir. 1951), in which a judgment creditor attempted to set aside a conveyance of land from husband to wife. *Id*. The undisputed evidence showed that the wife had orally agreed to convey the subject property to her husband with the understanding that it would be used as collateral to obtain a loan. This agreement was made with the further understanding that the wife would remain equitable title holder of the property until the obligation had been fulfilled, at which point the property would be reconveyed. *Id*. at 41. At the time of the re-conveyance, there was litigation pending between the creditor and the husband, but no judgment had yet been rendered. The district court stated that a conveyance of property to carry out the terms of an oral trust in land is upon consideration that the law recognizes, and is valid against creditors of the grantor, unless facts are such which give rise to the doctrine of estoppel. *Id*. at 44.

¶33. The Defendants submit that Beverly Parker proffered evidence that she had paid nearly $150,000 on behalf of James Parker's business interests with the understanding that he would convey to her some oil and gas interests in exchange. The proffered evidence took the form of several checks that the chancellor refused to admit into evidence because the Defendants had failed to tie them to any notes. The Defendants argue that since the chancellor failed to state on which legal theory his evidentiary requirement of a note was based, the checks were improperly excluded. The Defendants argue further that the instant case is even more compelling than *Detrio* because the checks are direct evidence of the oral agreement between Beverly and James Parker.

¶34. The Plaintiffs submit that *Detrio* does not support a finding that the chancellor was required to believe Beverly Parker's oral testimony at trial. The Plaintiffs cite *Planters Bank & Trust Co. v. Sklar*, 555 So.2d 1024 (Miss. 1990). In *Planters Bank* this Court held that the trial judge, sitting in a bench trial as the trier of fact, is the exclusive authority for determining a witness's credibility. *Id*. at 1033. The Plaintiffs argue that the chancellor made his rulings after hearing Beverly Parker's testimony regarding the purported consideration. Finally, the Plaintiffs argue that based upon Beverly Parker's poor memory and conflicting testimony given during her deposition and at trial, the chancellor was more than justified in discounting her version of events.

¶35. This Court has held that the admission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Barrett v. Parker*, 757 So.2d 182, 188 (Miss. 2000). In the instant case, the issue is not whether the chancellor erred in excluding the checks as evidence of consideration given by Beverly Parker, but whether the chancellor's decision to discount this evidence was an abuse of discretion. The chancellor heard all of Beverly Parker's testimony regarding the checks and was in the best position to determine her credibility. The record clearly reflects that at several times during the trial, Beverly Parker either contradicted herself or stated that she couldn't remember the

circumstances surrounding a particular transaction. In light of this, it was well within the chancellor's discretion to have required something more than the checks' mere production, to substantiate her claim. This issue is without merit.

## V.

### WHETHER THE TRANSFERS FROM JAMES E. PARKER, SR. TO THE OTHER DEFENDANTS WERE FRAUDULENT FOR LACK OF VALUABLE CONSIDERATION.

¶36. The Defendants next submit that the chancellor erred in finding that the transfers from Parker to other family members were fraudulent for lack of valuable consideration. They cite *Barbee v. Pigott*, 507 So.2d 77 (Miss. 1987), in which this Court enumerated certain badges of fraud in determining whether a conveyance to a relative is indeed a bonafide conveyance. The *Barbee* Court held that the factors to consider were:

> Inadequacy of consideration; transaction not in usual course or mode of doing business; absolute conveyance as security; secrecy; insolvency of grantor; transfer of all his property; attempting to give evidence of fairness by conscripting sister-in-law as a conduit for passing title to the wife; retention of possession; ... relationship of the parties; and transfer to person having no apparent use for the property.

*Id*. at 85 (citing *Reed v. Lavecchia,*187 Miss. 413,193 So. 439 (1940)).

¶37. The Defendants posit that none of these factors are present in the instant case. They submit that each family member gave consideration well in excess of the value of the transfer and that each transaction was made in the normal course of business. The Defendants further submit that the conveyances were made absolutely and without reservation. Moreover, the Defendants submit that the conveyances were not made in secret and were recorded in the public records. Finally the Defendants submit that the conveyances did not represent all of Parker, Sr.'s property, nor did they render him insolvent. Accordingly, the Defendants urge that the chancellor's finding was clearly erroneous.

¶38. The Plaintiffs counter with their position that the Defendants are admittedly children and close family members of the judgment debtor and as such they must provide clear and satisfactory evidence of either a pre-existing debt, or sufficient evidence to overcome the rebuttable presumption that any conveyances to them were not supported by adequate consideration. The Plaintiffs argue that the chancellor, as finder of fact, reasonably found the testimony of James Parker, Jr. and Debra Broxson insufficient. Furthermore, the Plaintiffs argue that since there was no testimony from Axelson, Moreland or White presented at trial, the presumption was not overcome and as such, the trial judge's finding must be affirmed.

¶39. A chancellor's findings will not be disturbed on review unless he abused his discretion, was manifestly wrong, or made a finding which was clearly erroneous. *Bank of Miss. v. Hollingsworth*, 609 So.2d 422, 424 (Miss.1992). In the instant case, the chancellor heard and saw the evidence regarding consideration given by Parker's relatives for their conveyances. A review of the record suggests that the chancellor was not convinced, especially since many of these transfers were for "Ten Dollars and other valuable consideration." The record does not support a finding that the chancellor either abused his discretion, was manifestly wrong or made a finding which was clearly erroneous. Accordingly, the Defendants' argument is

without merit.

## VI.

### WHETHER THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 15 OF THE MISSISSIPPI RULES OF APPELLATE PROCEDURE.

¶40. The Defendants finally submit that the trial court erred in not granting the Defendants' motion to dismiss pursuant to Rule 15 of the Mississippi Rules of Appellate Procedure. Mississippi Rule of Appellate Procedure 15 states:

(a) If a trial judge in a civil case fails to render a decision on a motion or request for relief which would be dispositive of all the claims or the rights and liabilities of all the parties, within six (6) months after taking such a motion or request under advisement, any party in the case may apply to the Supreme Court for a writ of mandamus to compel the trial judge to render a decision on the matter taken under advisement or deferred. Application for a writ of mandamus must, except in the case of excusable neglect and in which manifest injustice will result from failure to allow the later filing, be made within 45 days after the expiration of six (6) months from the date the motion or request was taken under advisement by the trial judge.

(b) Application for a writ of mandamus by the party who filed the original complaint shall not relieve the party who filed a counterclaim or cross-claim from applying for a writ of mandamus within the time prescribed. Neither shall the application for a writ of mandamus by the party filing a counterclaim or cross-claim relieve the party filing the original action from applying for a writ of mandamus within the time prescribed. The party filing a complaint and the party filing a counterclaim or cross-claim may join the application for a writ of mandamus.

(c) If a party who filed the original complaint fails to apply for a writ of mandamus within the time prescribed, the complaint shall stand dismissed without prejudice, except upon a showing that the failure to timely apply resulted from excusable neglect and that manifest injustice will result from the dismissal. If a party who has filed a counter-claim or a cross-claim fails to apply for a writ of mandamus within the time prescribed, likewise, except upon a showing that the failure to timely apply resulted from excusable neglect and that manifest injustice will result from the dismissal, the counter-claim or cross-claim shall stand dismissed without prejudice.

M.R.A.P. 15. (subsection headings omitted).

¶41. The Defendants submit that on December 11, 1997, at the end of trial, the chancellor took the matter under advisement. The Defendants submit further that a final judgment was not rendered until over a year later on December 15, 1998. The Defendants argue that because the Plaintiffs failed to apply for a writ of mandamus as required by the Rule, their case should have been dismissed. The Defendants cite *O'Neal Steel, Inc. v. Millette*, 797 So.2d 869 (Miss. 2001), in which this Court stated that,

the primary purpose of statutory time limitations is to compel the exercise of the right of action within a reasonable time ...Accordingly, the fact that a barred a claim is a just one or has the sanction of a moral obligation does not exempt it from the limitations period. These statutes of repose apply with full force to all claims and courts cannot refuse to give the statute effect because it seems to operate

harshly in a given case.

*Id.* at 876 (citing ***Cole v. State,*** 608 So.2d 1313, 1317 (Miss.1992)).

¶42. The Plaintiffs submit that the chancellor expressly found that the failure of the plaintiffs to make application for a writ of mandamus was the result of excusable neglect and that dismissal of the complaint would result in manifest injustice. The Plaintiffs submit further that the chancellor's ruling was in fact rendered within six months after actually taking the matter under advisement because the court was waiting on briefs from the parties and a transcript of motions filed by the defendant. Finally, the Plaintiffs submit that the facts and circumstances warrant suspension of the Rule in this particular case.

¶43. The chancellor's finding is upheld. The chancellor himself noted in his order denying the Defendants' motion to dismiss, that it would be difficult to calculate the time in which he actually took the matter under advisement because he was still awaiting briefs from both parties at the end of trial. Moreover, the chancellor made an on the record determination that the Plaintiffs' failure to apply for a writ was the result of excusable neglect, and that dismissal of the case would result in manifest injustice. Since Rule 15 allows such a determination to excuse compliance therewith, and since the chancellor's findings are clearly supported by the record, the Defendants' argument is without merit.

## VII.

**WHETHER THE TRIAL COURT ERRED IN FAILING TO DIRECT EXECUTION UPON THE SUBJECT PROPERTIES TO SATISFY THE INDEBTEDNESS ESTABLISHED BY THE PLAINTIFFS.**

¶44. The Plaintiffs submit that the chancellor erred in failing to direct execution upon the subject properties to satisfy Parker's debt. The Plaintiffs argue that they have diligently pursued recovery of the subject debts and have incurred significant expense as a result. The Plaintiffs ask this Court to remand the case to the trial court for purposes of ordering execution on the properties as prayed for in their original complaint.

¶45. The overwhelming weight of the evidence supports Plaintiffs' request, and this matter is remanded to the trial court for purposes of ordering execution on properties.

## VIII.

**WHETHER THE TRIAL COURT ERRED IN FAILING TO ASSESS DAMAGES IN FAVOR OF PLAINTIFFS OR LEVY MONETARY SANCTIONS AGAINST JAMES E. PARKER, SR. FOR DISCOVERY VIOLATIONS.**

¶46. The Defendants submit that the issue of sanctions was waived by the Plaintiffs because they failed to obtain a ruling from the trial court at trial. The Defendants submit further that since the Plaintiffs failed to raise the issue again in their Response to the Defendants' Motion to Dismiss, for Reconsideration and for New Trial, that they are barred from raising it on appeal.

¶47. The Plaintiffs acknowledge the fact that the question of sanctions was reserved by the trial court prior to the conclusion of the trial, but was not addressed in the final judgment or before the appeal was taken. The Plaintiffs also admit that this resulted in the trial court's loss of jurisdiction over the matter. The Plaintiffs urge, however, that where an item of requested relief is not addressed in a final judgment rendered by a

chancery court, and the reason for the omission is not obvious from review of the record, remand on an omitted issue alone is the appropriate remedy. *Precision Interlock Log Homes, Inc. v. O'Neal*, 689 So.2d 778, 780 (Miss. 1997).

¶48. It is undisputed that the chancellor failed to address the issue of sanctions. It is also apparent that a review of the record does not disclose the chancellor's reasons for failing to do so. Accordingly, the issue should be remanded for an appropriate determination by the trial court.

## CONCLUSION

¶49. In conclusion, we affirm the chancellor but, we remand this case to the trial court with directions that it order execution upon the subject properties and that it conduct a hearing on and decide the plaintiffs' motion for sanctions against James E. Parker, Sr.

¶50. **AFFIRMED AND REMANDED.**

> **PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**