Richard C. **RAINWATER** and Anna D. **Rainwater** Plaintiffs

v.

**LAMAR LIFE INSURANCE COMPANY; Conseco Life Insurance Company; Thomas Stroo; James Payton; and Other Related Companies the Identity of Which Will be Ascertained Through Discovery in This Action Defendants**

No. 2:01–CV–179PG.

United States District Court, S.D. Mississippi, Hattiesburg Division.

Feb. 14, 2003.

Lawrence E. Abernathy, III, Laurel, MS, for Richard C. Rainwater, Anna D Rainwater.

Phillip B. Abernethy, Emerson Barney Robinson, III, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Lamar Life Insurance Company, Conseco Life Insurance Company.

Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, David M. Ratcliff, Ratcliff & Ratcliff, Laurel, MS, Douglas R. Duke, Shell Buford, PLLC, Jackson, MS, for Thomas Stroo.

Norman G. Hortman, Jr., Chris B. McDaniel, Gibbes, Graves, Mullins, Hortman, Harlow, Martindale & Jones, PLLC, Laurel, MS, for James Payton.

## MEMORANDUM OPINION ON MOTION TO ALTER OR AMEND PREVIOUSLY ENTERED ORDER

PICKERING, District Judge.

On June 28, 2002, this Court entered a Memorandum Opinion and Order in which the Court granted Plaintiffs' Motion to Remand to state court. On July 10, 2002, Defendants filed a motion under Federal Rules of Civil Procedure 59(e)(1) to alter or amend the Court's June 28, 2002, Memorandum Opinion and Order and to deny Plaintiffs' remand motion, or (2) to deny the Plaintiffs' remand motion and certify appealability to the Fifth Circuit, or (3) to vacate the June 28, 2002, Memorandum Opinion and Order and stay this action pending the outcome of an interlocutory appeal in a case recently certified by Judge Barbour in a similar action. The parties have briefed the matter. The Court conducted a hearing on October 30, 2002, at which time the parties were permitted to present their positions.[1] The Court also invited amicus briefs and permitted amicus parties to offer additional argument. The matter is now ripe for decision.

■ Since the facts of this case are fully set out in the previous Opinion and Order, the facts will not be repeated. *See* 207 F.Supp.2d 561 (S.D.Miss.2002). There are only three recognized grounds for granting a Rule 59(e) motion: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.*, 130 F.R.D. 625, 626 (S.D.Miss.1990).

■ As an initial matter, Plaintiffs argue that this Court has lost jurisdiction over this case by virtue of 28 U.S.C. § 1447(c), which provides that an order to remand is not reviewable on appeal or otherwise. While this would be true if the clerk of the Court had mailed a certified copy of this Court's order to the state court, Plaintiffs' argument is misplaced

---

1. The hearing was conducted in conjunction with a Motion to Alter or Amend filed by the Defendants in *Johnson & Holmes v. Lincoln Life,* Civil Action No. 2:01cv282pg, a case which presented similar issues.

since the certified copy has not been mailed to the clerk of state court. *See Arnold v. Garlock, Inc.,* 278 F.3d 426, 437–38 (5th Cir.2001).

■ As one basis of their Motion to Alter or Amend, the Defendants argue that this Court in its previous opinion erroneously used the "no possibility" standard to determine if the case should be remanded and that the Court should have instead used a "no reasonable basis" standard. Defendants argue that *Badon v. RJR Nabisco, Inc.,* 224 F.3d 382 (5th Cir.2000), changed the standard of review. Defendants cite an opinion by Judge Bartle of the United States District Court for the Eastern District of Pennsylvania in Civil Action Nos. 01–20182, 02–20098, and 02–20107, MDL Docket No. 1203, in which Judge Bartle interpreting Fifth Circuit law concluded that the "no possibility" of recovery standard is no longer applicable in the Fifth Circuit. Judge Bartle wrote that the "no possibility" decisions

> no longer have vitality as a result of *Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 286 (5th Cir.2000), where the Fifth Circuit explicitly determined that the proper question in a fraudulent joinder analysis is whether there is a "reasonable possibility" of a claim against a defendant.

Slip Opinion at 15. This Court does not agree with Judge Bartle that the "no possibility" of recovery standard is no longer Fifth Circuit law.

Judge King wrote for a Fifth Circuit panel, as recently as August 1, 2002, that

> to establish fraudulent joinder of a non-diverse defendant, the removing party must show that there is *no possibility* that the plaintiff would be able to establish a claim against the non-diverse defendant in state court. *In re Rodriguez,* 79 F.3d 467, 469 (5th Cir.1996).

(emphasis in original). Unpublished Slip Opinion in *Riley v. F.A. Richard, et al,* No. 01–60337, 46 Fed.Appx. 732 (5th Cir. August 1, 2002), page 11. Judge King went further and wrote

> in the context of the fraudulent joinder inquiry, "[w]e do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so. *Dodson,* 951 F.2d at 42–43. Moreover, we resolve all factual and legal ambiguities in favor of the non-removing party. *Id.* at 42."

*Id.* at 14, 15.

The *Badon* decision did not invent the "reasonable basis" analysis. It has been a part of the standard of review for fraudulent joinder in the Fifth Circuit since the earliest cases. As stated by the Court in *B., Inc. v. Miller Brewing,* 663 F.2d 545, 550 (5th Cir.1981), to determine that there is "no possibility" of recovery, the district court must determine whether as "a matter of law, there [is] no *reasonable basis* for predicting that the plaintiff might establish liability against a named in-state defendant in state court." (emphasis added) *See also Burden v. Gen'l Dynamics Corp.,* 60 F.3d 213, 216 (5th Cir.1995).

*Badon* simply restated the standard. It held that

> [e]ver since a time many years prior to 1988 we have consistently recognized that diversity removal may be based on evidence outside the pleadings to establish that the plaintiff has *no possibility* of recovery on the claim or claims asserted against the named resident defendant.

*Id.* at 389 (emphasis added). Later in the decision, the *Badon* Court considered the defendants' affidavits in conjunction with the plaintiffs' lack of evidence and the Court held that there was no reasonable basis for predicting that plaintiffs might

establish liability on their conspiracy claim. *Id.* at 393. In effect, the *Badon* court determined that there was "no possibility" of recovery by making a "no reasonable basis" analysis.

■ Defendants argue that "once the court pierces the pleadings, and the defendants produce evidence negating the plaintiff's position, the plaintiff is required to come forward with counter evidence and cannot rely simply on the averments in the complaint." *Badon,* 224 F.3d at 383–94 (citing the standard of review for summary judgment cases). Fifth Circuit precedent clearly establishes that it is discretionary with the district court whether to pierce the pleadings and conduct a summary judgment-type review. *See e.g., Burden,* 60 F.3d at 217 and *Badon,* 224 F.3d 382 at 389 (fn.10). *See also Wells' Dairy Inc. v. American Indus. Refrigeration, Inc.,* 157 F.Supp.2d 1018, 1032 (N.D.Iowa 2001) (explaining that the Fifth Circuit's method of piercing the pleadings is discretionary). This is further demonstrated by the court's analysis in *Hart v. Bayer Corp.,* 199 F.3d 239, 246 (5th Cir.2000). In *Hart,* the district court did not pierce the pleadings. Thus, the Fifth Circuit limited its review on appeal to the allegations in the complaint when determining whether a non-diverse defendant was fraudulently joined. *Id.* at 247. In August 2002, the Fifth Circuit again used this same approach in *Riley supra.*

The Defendants assert that once they have come forward with evidence negating the Plaintiff's position then the pleadings have been pierced and a summary judgment-type proceeding has commenced, thereby requiring the Plaintiff to present counter evidence. In their brief, Defendants ignore the fact that whether to pierce the pleadings is discretionary with the trial court. Defendants later conceded at the October 30th hearing that the decision to pierce the pleadings is discretionary with the Court.

In that Fifth Circuit decisions have spoken of both "no possibility" of recovery and "no reasonable basis" for predicting liability, this Court recognizes some ambiguity in the Fifth Circuit's analysis. However, both of these phrases are used in many of the same Fifth Circuit opinions. This Court concludes that when the trial court has analyzed a motion for remand strictly on the pleadings that the Fifth Circuit, in general, has conducted a "no possibility" of recovery analysis without going any further. This Court concludes that when the trial court has pierced the pleadings and conducted a summary judgment-type review of evidence that the Fifth Circuit has still applied the "no possibility" of recovery standard but has analyzed that standard by considering whether "as a matter of law [there] is no reasonable basis for predicting that the plaintiff might reasonably establish liability against a named in-state defendant in state court." *B. Inc.,* 663 F.2d at 550. In those cases in which the pleadings were pierced by the trial court, the Fifth Circuit has apparently used the "no reasonable basis" analysis to determine if there is "no possibility" of recovery. *Badon* did not change the law, but this Court does conclude that the Fifth Circuit has analyzed the "no possibility" standard in a slightly different manner when the trial court has pierced the pleadings.

The fact that the Fifth Circuit has analyzed the "no possibility" of recovery standard somewhat differently in cases where the trial court pierced the pleadings is borne out by the Fifth Circuit's analysis in *Badon II,* in which the Court wrote

[i]n our prior opinion, we affirmed the district court's rulings that the removal was timely and that the conspiracy claim

against the Louisiana wholesalers was fraudulently joined because there was *no reasonable possibility of recovery* thereon. (citation omitted). We reaffirm those holdings.

*Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 284 (5th Cir.2000) (emphasis added). The Court further cited to *Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 816 (5th Cir.1993), wherein the Fifth Circuit held that "[i]f there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no fraudulent joinder." *Id.* at 286. In a footnote, in *Badon II,* the Fifth Circuit went on to explain that

> [p]laintiffs appear to argue that *any mere theoretical possibility* of recovery under local law-no matter how remote or fanciful-suffices to preclude removal. We reject this contention. As the cited authorities reflect, there must at least be arguably a *reasonable* basis for predicting that state law will allow recovery in order to preclude a finding of fraudulent joinder.

(emphasis in original). *Id.* at 286 n. 4.

The Fifth Circuit has cautioned against conducting a full evidentiary hearing in the fraudulent joinder context. *See Burden,* 60 F.3d at 217. The Fifth Circuit also has cautioned against "pre-trying" a case. *See Hart,* 199 F.3d at 246. The procedure whereby the Court "pierces the pleadings" is discretionary and lies somewhere between a judgment on the pleadings and a motion for summary judgment. The Fifth Circuit has noted that when a district court pierces the pleadings, it is not pre-trying the merits. *Id.* at 246–47.

This Court does not agree with the Defendants' argument that the standard of review for remand cases somehow fundamentally changed after *Badon.* Nevertheless, the Court is cognizant of the Defendants' other basic underlying arguments in

its Rule 59(e) Motion. Specifically, Defendants assert that in reaching its decision, the Court should not have relied so heavily on the fact that federal district courts in Mississippi have reached contradictory conclusions when they interpreted Mississippi law on the issue of fraudulent concealment and whether or not subsequent affirmative acts are required to toll the statute of limitations. This Court concludes that subsequent affirmative acts is not the issue at all. The issue is whether these Plaintiffs were on notice of their claims more than three years before they filed their lawsuit.

■ This Court in its original opinion stated that it could not "in good conscience determine that there [was] no possibility that Plaintiffs cannot prevail against the resident Defendants." One of the major reasons for granting remand was the conflict of opinions among the federal district court judges in Mississippi relative to the precise question presented by this case. One of the stated reasons for granting remand in some of the cases decided by federal district court judges in Mississippi was the fact that the Mississippi Supreme Court has yet to rule on whether subsequent affirmative actions are required in fraudulent concealment cases to toll the statute of limitations, or whether the initial fraud is sufficient without any subsequent affirmative fraudulent act. This Court concludes that an affirmative act (whether subsequent or not) clearly is required under Mississippi law. Fraud, which is by its nature self-concealing, may constitute an affirmative act for purposes of the fraudulent concealment statute. *See Phillips v. New England Mutual Life Ins. Co.,* 36 F.Supp.2d 345, 349 (S.D.Miss.1998); *Seaboard Planning Corp. v. Powell,* 364 So.2d 1091, 1095 (Miss.1978) ("The very nature of fraud is such that it cannot be discover-

ed until sometime after the fraudulent act is committed").

■ After further reflection, this Court has concluded that whether subsequent affirmative fraudulent acts occur or do not occur is immaterial for the resolution of this case. Miss.Code Ann. § 15–1–67 establishes that the statute of limitations begins to run when the cause of action "shall be, or with reasonable diligence might have been, first known or discovered." Legislative enactment of public policy, if constitutional, trumps judicial precedent. The legislature has determined what does and does not toll the statute of limitations on Mississippi state law fraudulent concealment claims. The issue in this case is simply whether or not plaintiffs knew of the fraud or by the exercise of reasonable diligence should have known of the fraud. That is statutory. It controls. The presence or absence of subsequent affirmative acts is immaterial, unless it has a bearing on notice, or knowledge, of the fraud. That being true, there is not the ambiguity in Mississippi law as indicated by some of the decisions by federal judges in Mississippi.

The Mississippi Supreme Court in the combined cases of *American Bankers' Ins. Co. v. Wells*, 819 So.2d 1196 (Miss.2001), answered the question of notice, as it applies to this case, with clarity. As to the *Oliver* case, the Court held:

> We find that the Certificates of Insurance gave adequate notice of the backdating and that a reasonable person would have known of the backdating at the time of the receipt of the Certificates... [T]he statute of limitations began to run ... when he received the Certificate of Insurance.

*Id.* at 1202 In the *Wells* case, the Plaintiff was alleged not to have received a copy of the certificate of insurance. The Court concluded that the

trial court did not err in denying the motion to dismiss Wells's claim for backdating because she never received reasonable notice of the backdating and the statute of limitations never began to run. . . .

*Id.*

■ Upon further reflection, this Court concludes that under *American Bankers'* and the cases cited in this Court's original opinion there is "no reasonable basis" for predicting that the Mississippi Supreme Court would hold that the statute of limitations was tolled and did not run against the claims asserted by Plaintiffs against the resident Defendants. This Court in its previous opinion wrote

> The insurance policies involved and numerous annual statements were delivered to the Plaintiffs more than three years before this lawsuit was filed. These documents all revealed that the insurance policies in question were not investments, that they were not fully paid up, that the dividend rate was not guaranteed and could change from time to time, and that cash values and paid up insurance would depend entirely on the amount of the dividends earned, which would be determined by the interest rates then received.

Thus, the Plaintiffs knew or by the exercise of reasonable diligence should have known of the alleged fraud. They were on notice of the fraud by virtue of the documents in their possession. *See American Bankers' Ins. Co. v. Oliver, supra.* Under § 15–1–67, the statute of limitations was not tolled. Thus, there is "no possibility" of recovery against the resident defendants. Accordingly, this Court committed a clear error of law in remanding this case, and the previous order rendered in this case remanding this case is hereby set

aside. Plaintiffs' Motion to Remand is therefore denied.

 The Court is aware that Plaintiffs sought to allege subsequent affirmative acts by the resident Defendants. This Court concludes that the alleged conclusory and general statements, such as "your policies are doing fine" and "you will make lots of money off these policies," is not sufficient as a matter of law to toll the statute of limitations in view of the specific information contained in the documents provided to Plaintiffs. *See Southern Mortgage Co. v. O'Dom*, 699 F.Supp. 1223, 1226 (S.D.Miss.1987) (recognizing the general rule that fraud may not be predicated on a representation as to matters in the future); *Guynn v. Shulters*, 223 Miss. 232, 78 So.2d 114, 122 (Miss.1955) (explaining that to establish fraud and fraudulent statements to set aside a purchase of stock, "[i]t must be shown that the statement was not uttered as an opinion..."); *Kidd v. Kidd*, 210 Miss. 465, 49 So.2d 824, 827 (1951)("predictions or promises as to future events are not ordinarily sufficient upon which to base actionable fraud..."); *New York Life Ins. Co. v. Gill*, 182 Miss. 815, 182 So. 109, 114–15 (1938) (statement of opinions not sufficient for tolling statute of limitations). *See also, O'Neal Steel Inc. v. Millette*, 797 So.2d 869, 875 (Miss.2001) (holding that the statute of limitations on a fraudulent conveyance is not tolled if the conveyance is a matter of public record); *Rimmer v. Austin*, 191 Miss. 664, 4 So.2d 224, 225 (1941) (same).

In accordance with 28 U.S.C. § 1292, this Court is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion (i.e. conflicting opinions of other district courts) despite the fact that this Court is of the opinion that § 15–1–67 clearly controls and mandates denial of the Motion to Remand. This Court concludes that an immediate appeal from this order might materially advance the ultimate termination of this litigation. Accordingly, the Plaintiffs may seek an interlocutory appeal within ten days of the entry of this order, with permission of the Fifth Circuit, under § 1292, if they so desire. If the Plaintiffs elect to file an interlocutory appeal in this matter, this cause will be stayed until the Fifth Circuit has ruled.